LAKES OF the FOUR SEASONS PROPERTY OWNERS' ASSO-CIATION, INC., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Respondent.

No. 49T10–0606–TA–61.

Tax Court of Indiana.

Oct. 29, 2007.

Theodore A. Fitzgerald, Brian E. Less, Petry, Fitzgerald & Less, P.C., Hebron, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Jennifer E. Gauger, Matthew R. Nicholson, John D. Snethen, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

Jeffrey T. Bennett, Bradley D. Hasler, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Amici Curiae.

FISHER, J.

Lakes of the Four Seasons Property Owners' Association, Inc. (LOFS) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the 2002 assessment year (the year at issue). The issue on appeal is whether the Indiana Board erred in upholding the Department of Local Government Finance's (DLGF) assessment of LOFS' streets at $650.00 per acre.

## FACTS AND PROCEDURAL HISTORY

Lakes of the Four Seasons is a private, gated community in Lake County, Indiana.[1] The community contains approximately 2,500 residences and 26 miles (107.6 acres) of streets. LOFS owns and maintains all the streets within the community.

---

1. Part of the community also lies in Porter County, Indiana. The Porter County portion of the community is not, however, at issue in this case.

For the 2002 assessment, the DLGF valued LOFS' streets at $70,290.[2] In arriving at this value, the DLGF utilized the applicable Neighborhood Valuation Form, which provided that the land should be assessed at a base rate of $6,534.00 per acre. The DLGF then applied a negative influence factor of 90% for a per acre assessment of approximately $650.00.

LOFS subsequently filed a Petition for Review with the Indiana Board (Form 139L), alleging that its streets should have been valued at zero because they were so encumbered by easements and restrictions that they had no value. The Indiana Board held a hearing on LOFS' Form 139L on October 4, 2005. On May 15, 2006, the Indiana Board issued a final determination denying LOFS' request for relief. In its final determination, the Indiana Board stated that

> [w]hile [LOFS'] evidence supports the proposition that easements and other restrictions encumbering the subject property negatively affect [its] market value-in-use, it is insufficient to rebut the current assessment. The current assessment already discounts the value of the subject land by 90%. Thus, the 107.576 acres of private roadway is currently being assessed at approximately $650 per acre. [LOFS] did not offer an appraisal prepared in conformance with [the Uniform Standards of Professional Appraisal Practice] or other information compiled in accordance with generally accepted appraisal practices to quantify the effect of the easements and restrictions on the subject property. [LOFS] therefore did not demonstrate that the current assessment is incorrect or what the correct assessment should be.

(Cert. Admin. R. at 21.)

LOFS filed an original tax appeal on June 22, 2006. The Court heard the parties' oral arguments on September 14, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2007).

## DISCUSSION AND ANALYSIS

Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does

---

2. LOFS' total land assessment for the year at issue was $113,900—$70,290 was attributable to its streets and another $43,610 was attributable to other land. (*See* Cert. Admin. R. at 43.) Because LOFS has presented its argument in this case (both written and orally) as whether the streets are properly assessed, the Court presumes that the other portion of the land assessment is not at issue on appeal.

not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2. *See also* IND.CODE ANN. § 6–1.1–31–6(c) (West 2007). In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value ... represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property." [3] Manual at 2 (footnote added).

To determine the market value-in-use of land, Indiana's assessing officials primarily rely on neighborhood valuation forms.[4] *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (hereinafter, Guidelines) (incorporated by reference at 50 I.A.C. 2.3–1–2), bk. 1, ch. 2 (footnote added). Nevertheless, these neighborhood valuation forms merely provide the starting point for assessing officials: indeed, to the extent that "situations [ ] arise that are not explained or that result in assessments that may be inconsistent with th[e] definition [of market value-in-use] ... the [assessing officials] shall be expected to adjust the assessment to comply with th[e] definition and may ... consider [any] additional factors ... to accomplish th[at] ad-

justment." Manual at 2. *See also* Guidelines, bk. 1, ch. 2 at 16 (stating that with respect to selecting base rates for land valuation, "the pricing method for valuing the neighborhood is of less importance than arriving at the *correct* value of the land as of the valuation date" (emphasis added)).

While the market value-in-use of land, as ascertained through an application of the applicable neighborhood valuation form, is presumed to be accurate, that presumption is rebuttable. *See* Manual at 5. Thus, a taxpayer who appeals its assessment

shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption and to establish the actual true tax value of the property so long as such information is consistent with the definition of true tax value provided in th[e M]anual and was readily available to the assessor at the time the assessment was made. *Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles.*

*Id.* (emphasis added).

■ On appeal, LOFS contends that the Indiana Board's final determination is not

---

**3.** "In markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in exchange[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 2.

**4.** The neighborhood valuation forms provide base rates for different neighborhoods based on sales information from the area. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (hereinafter, Guidelines) (incorporated by reference at 50 I.A.C. 2.3–1–2), Book 1, Chapter 2 at 7–28.

supported by substantial evidence. More specifically, it asserts that the Indiana Board completely ignored its evidence demonstrating that its streets had no value due to the fact that they were so encumbered by easements and restrictions.[5] Indeed, LOFS explains that during the Indiana Board hearing, it presented unrebutted evidence demonstrating that:

1) many jurisdictions throughout the country have adopted the principle that "common area properties" can be so burdened by restrictions that they are rendered valueless;

2) it owns the streets within its community for the sole benefit of the homeowners therein and, as a result, it has granted easements in the streets to those parties for their exclusive use;

3) because ownership of the streets is to reside at all times in LOFS, it can never sell or convey the streets to any other party; and

4) it cannot charge for the use of the streets, despite the fact that it spends, at a minimum, $200,000 per year to maintain them.[6]

(Pet'r Br. at 2–3 (footnote added).) (*See also* Cert. Admin. R. at 48, 52, 54–69, 100–05.)

The DLGF, on the other hand, asserts that the Indiana Board's final determination must be affirmed because LOFS' evidence proves nothing more than "what [i]s already known—*i.e.*, that the common areas are encumbered by easements." (Resp't Br. at 11.) In other words, the DLGF contends that without an actual appraisal, LOFS' claim that its property has zero value is nothing more than a conclusory statement. (Resp't Br. at 11; Oral Argument Tr. at 21, 24.) The Court, however, disagrees.

It is well settled in Indiana that an owner's testimony as to the value of his or her property will carry probative force if it is based upon facts and not speculation. *See Court View Centre, L.L.C. v. Witt*, 753 N.E.2d 75, 82 (Ind.Ct.App.2001) (citations omitted). *Cf. with* Ind. Evidence Rule 701 (stating that "[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue"). If, however, the property owner has not identified the objective bases for his opinion, "the proffered opinion [provides] ... no way for the [adjudicator] to assess whether it is rationally based on the [owner's] perceptions, and ... [it] ... only tells [the adjudicator] in conclusory fashion what it should find." *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743 (Ind.Ct.App.1998) (internal quotation and citation omitted), *trans. denied.* Here, LOFS' evidence provided an objective, factual basis for its opinion that its streets have no value: it derives no benefit from owning the streets (the benefit is to the individual property owners within Lakes of the Four Seasons), it cannot sell or convey the streets to another party, the streets generate no income, and the streets cost at least $200,000 annually to maintain. *Cf. with* Manual at 2 (stating that a property's market value-in-use is a

---

5. LOFS acknowledges, however, that the streets do have value to the individual property owners within the community and that that value is accounted for and reflected in their individual property assessments. (*See* Cert. Admin. R. at 103, 105, 111–12.)

6. LOFS annually assesses the community's homeowners to cover such costs. (Cert. Admin. R. at 102.)

reflection of the property's utility to its owner or similar user and is typically measured by the ask price of property).

Because LOFS' evidence was sufficient to prima facie support its claim, the burden shifted to the DLGF to rebut that evidence. *See Hometowne Assocs. v. Maley*, 839 N.E.2d 269, 277 (Ind. Tax Ct.2005). As clearly demonstrated in the administrative record, however, the DLGF did not accomplish the task: the DLGF representative merely indicated that the subject property was valued pursuant to the neighborhood valuation form and then assigned a negative 90% influence factor "because [while] we do note that ... we are dealing with [streets] ... all property has a value to it." (*See* Cert. Admin. R. at 107–09.) Such testimony merely describes how the DLGF initially arrived at the assessed value of the subject property; it does not, given LOFS' evidence, establish

that the $650.00 per acre assessment accurately reflected the subject property's market value-in-use.[7]

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is not supported by the evidence presented during the administrative hearing process and is therefore REVERSED. The matter is REMANDED to the Indiana Board so that it may instruct the DLGF to assess the subject property consistent with this opinion.

---

**7.** This Court has previously stated its belief that "the most effective method to rebut the presumption that an assessment is correct is through the presentation of a market value-in-use appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP)." *Kooshtard Prop.* *VI, L.L.C. v. White River Twp. Assessor,* 836 N.E.2d 501, 506 n. 6 (Ind. Tax Ct.2005), *review denied.* As evidenced by the holding in this case, however, the presentation of such an appraisal may not be the only way to rebut the presumption that an assessment is correct.