ATTORNEY FOR PETITIONER:
**C. REX HENTHORN**
HENTHORN, HARRIS & WELIEVER, P.C.
Crawfordsville, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ANDREW T. GREIN**
**GRAHAM T. YOUNGS**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

**FILED**

Apr 11 2017, 3:08 pm

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| MARY K. FISHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1601-TA-00001 |
| | ) | |
| CARROLL COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION
OF THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**April 11, 2017**

FISHER, Senior Judge

Mary K. Fisher challenges the final determination of the Indiana Board of Tax Review that established the assessed value of her real property for the 2012 and 2014 tax years. Upon review, the Court affirms the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

Fisher owns a 2.4 acre harbor lot that sits on Lake Freeman in Monticello, Indiana. (See Cert. Admin. R. at 2, 101-02, 194-95.) The lot, which contains a steel seawall, a

boat ramp, and a shed, is adjacent to the lot upon which Fisher's house sits. (See Cert. Admin. R. at 101-02, 113, 194-95, 256, 378-79.) The lot is subject to a non-exclusive easement by which certain nearby property owners can access the lake. (See Cert. Admin. R. at 211-12.)

Pursuant to Carroll County's zoning ordinances, Fisher's lot may be used for residential or public recreational (e.g., a public park or golf course) purposes. (See Cert. Admin. R. at 255, 357-67.) During the years at issue, Fisher allowed the Lafayette Sailing Club ("Club") to use her lot and the boat ramp; in exchange, the Club maintained the property and paid the applicable liability insurance and property taxes.[1] (See Cert. Admin. R. at 214-17, 474-75, 478.) Fisher also allowed the Department of Natural Resources to use her boat ramp and to maintain a boatlift on the property. (See Cert. Admin. R. at 111, 215, 252, 428-31.)

In 2011, Fisher's property was assessed at $58,300. In 2012, however, the property's assessment increased to $275,000. (See, e.g., Cert. Admin. R. at 7.) Fisher appealed the 2012 assessment to the Carroll County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA subsequently reduced the assessment to $232,800. In April of 2013, Fisher timely appealed the PTABOA's final determination to the Indiana Board.

In August of 2014, while her 2012 assessment appeal was still pending with the Indiana Board, Fisher appealed her property's 2014 assessment of $238,600. (See Cert. Admin. R. at 12, 15.) When the PTABOA failed to timely conduct a hearing on the 2014

---

[1] Fisher had a written agreement with the Club that expired at the end of December, 2012. (See Cert. Admin. R. at 214 ¶ 1.) After 2012, the Club continued to use the property subject to the same terms that were contained in that agreement. (See, e.g., Cert. Admin. R. at 427, 480-81.)

assessment appeal, Fisher sought resolution with the Indiana Board. (Cert. Admin. R. at 9-11.) See also IND. CODE § 6-1.1-15-1(k), (o)(1) (2014) (providing that if a county ptaboa does not timely resolve an appeal before it, the taxpayer may proceed to the Indiana Board).

The Indiana Board conducted a consolidated hearing on both of Fisher's assessment appeals on July 9, 2015. On November 20, 2015, the Indiana Board issued a final determination in the matter. In that final determination, the Indiana Board explained that with respect to the 2012 assessment appeal, the Carroll County Assessor bore the burden of proving that the assessment increase was correct under Indiana Code § 6-1.1-15-17.2.[2] (See Cert. Admin. R. at 35 ¶¶ 20, 22.) The Indiana Board held the Assessor met her burden by presenting an appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice ("USPAP"), that valued Fisher's lot at $302,500 for the 2012 tax year. (Cert. Admin. R. at 36 ¶ 26, 45 ¶ 58.) Consequently, the burden shifted to Fisher to rebut the Assessor's prima facie case. (Cert. Admin. R. at 45 ¶ 58.)

The Indiana Board noted that in her rebuttal presentation, Fisher argued that the Assessor's appraisal was invalid because 1) it valued the lot using residential and commercial properties as sales comparables and not properties that were public parks;

---

[2] Indiana Code § 6-1.1-15-17.2 contains what is commonly referred to as "the burden-shifting rule." See Orange Cnty. Assessor v. Stout, 996 N.E.2d 871, 873 (Ind. Tax Ct. 2013). The statute provides that if the assessment of the same property increases by more than 5% from one year to the next, the assessor bears the burden of proving that the assessment is correct. IND. CODE § 6-1.1-15-17.2 (2012) (amended 2014). Compare with IND. CODE § 6-1.1-15-1(m) (2012) (explaining that otherwise, the taxpayer bears the burden of demonstrating that the assessment is incorrect).

and 2) it did not take into account the easement's negative impact on the lot's overall value. (Compare Cert. Admin. R. at 41-44 ¶¶ 42-43, 45, 47, 49-51, 53-54 with 46 ¶ 59.) To support her argument, Fisher presented numerous photographs and maps of her lot as well as pictures of and property record cards for several other harbor properties on Lake Freeman. (See, e.g., Cert. Admin. R. at 29-30 ¶ 6, 410-20, 498-502.) Fisher also provided testimony explaining that she did not intend to build a house on her lot, how the easement impaired her enjoyment of the property, and how, because other people used her property, it was being used as a public park. (See, e.g., Cert. Admin. R. at 403-08, 461-62, 478, 492.) In fact, she claimed that prior to 2012, her property had actually been assessed as a public park. (See Cert. Admin. R. at 566.)

The Indiana Board found, however, that Fisher's evidentiary presentation failed to rebut the Assessor's prima facie case. Indeed, it explained that the evidence clearly demonstrated that her lot had both residential and commercial use aspects and, even though members of the public used the property, that evidence did not prove that the lot was, or had ever been assessed as, a public park. (See Cert. Admin. R. at 44 ¶ 55 n.6, 46 ¶¶ 60-61.) Moreover, the Indiana Board found that even though the appraisal did not quantify the easement's negative effect on the lot's value, that fact did not render it completely devoid of any probative value: given that Fisher herself presented no market-based evidence that quantified the easement's impact on her property's value, the appraisal supported the conclusion that the lot was worth, at the very least, its assessed value of $232,800. (See Cert. Admin. R. at 47-49 ¶¶ 64-65, 68; 52 ¶ 77.) Thus, the Indiana Board affirmed the PTABOA's 2012 assessment of Fisher's lot.

4

With respect to Fisher's 2014 appeal, the Indiana Board explained that Fisher bore the burden of proving that the assessment was incorrect under Indiana Code § 6-1.1-15-17.2 because she never appealed her 2013 assessment[3] and the assessment increase between 2013 and 2014 was less than 5%. (See Cert. Admin. R. at 35-36 ¶¶ 23-24.) See also supra note 2. The Indiana Board then held that Fisher did not meet her burden because she simply relied on the same evidence she used to rebut the propriety of the 2012 assessment. (Cert. Admin. R. at 52 ¶ 78.) This was particularly problematic, noted the Indiana Board, given that the Assessor presented a second USPAP appraisal that valued Fisher's lot at $301,000 for the 2014 tax year. (See Cert. Admin. R. at 31 ¶ 7, 36 ¶ 26, 52 ¶ 78.)

On December 29, 2015, Fisher initiated this original tax appeal. The Court heard oral argument on June 29, 2016. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Thus, Fisher must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2017).

---

[3] Fisher's 2013 assessment was the same as her 2012 assessment. (See Cert. Admin. R. at 194.)

5

**ANALYSIS**

On appeal, Fisher argues that the Indiana Board's final determination is erroneous and must therefore be reversed. The gist of her argument is that the Indiana Board erred when it 1) determined that the Assessor made a prima facie case that the 2012 assessment was correct; 2) determined that Fisher bore the burden of proof on the 2014 assessment; and 3) ignored the evidence that demonstrated that both assessments were incorrect. (See, e.g., Pet'r Br. at 1-3, 11-25.)

1.

Fisher first claims on appeal that the Indiana Board erred when it determined that the Assessor made a prima facie case that the 2012 assessment was correct. More specifically, Fisher asserts that: a) the Assessor failed to present evidence, as required by Indiana Code § 6-1.1-4-4.4, demonstrating why her property's assessment changed between 2011 and 2012; and b) the Assessor's appraisal was invalid. (See Pet'r Br. at 11-15, 18-23.)

a)

Indiana Code § 6-1.1-4-4.4 provides that when an assessing official changes a property's "underlying characteristics"[4] between assessments, she must document the reason for the change. IND. CODE § 6-1.1-4-4.4 (2012). In any appeal of the resulting assessment, the assessing official bears the burden of proving that the change to the underlying characteristic was valid. I.C. § 6-1.1-4-4.4.

---

[4] The statute indicates that a property's "underlying characteristics" include its age, grade, and or condition. IND. CODE § 6-1.1-4-4.4(b) (2012). See also 2011 REAL PROPERTY ASSESSMENT GUIDELINES (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2), App. A at 2-4, App. B at 2-4, Glossary at 2, 10 (indicating that age, grade, and condition are characteristics that apply to improvements and not to land).

6

Fisher concludes that because her assessment increased between 2011 and 2012, the Assessor "obviously" changed the use classification of her property from public park to residential/commercial. (See, e.g., Pet'r Br. at 2-3, 8, 12.) Given, however, that the "Assessor submitted no I.C. § 6-1.1-4-4.4 evidence to explain the reasons for th[at] change[,]" Fisher contends that the Assessor failed to make a prima facie case. (See Pet'r Br. at 12-15.)

The certified administrative record in this case reveals that at least as early as 2010, the Assessor classified the use of Fisher's lot as commercial and that that classification did not change between 2011 and 2012.[5] (See, e.g., Cert. Admin. R. at 194-95.) To the extent Fisher provided no evidence to support her claim that the Assessor did make such a change, (see, e.g., Cert. Admin. R. at 264-568), the reasonable inference is that the Assessor increased the value of Fisher's lot solely because it was undervalued in relation to other comparable properties. This inference is corroborated by the Assessor's market-based evidence (i.e., the appraisal). (See Cert. Admin. R. at 196-210, 297-98.) Accordingly, the failure to provide any "I.C. § 6-1.1-4-4.4 evidence" does not mean, as Fisher purports, that the Assessor failed to present a prima facie case. Rather, it is simply a function of the fact that Indiana Code § 6-1.1-4-4.4 did not apply in the first place.[6]

---

[5] The certified administrative record does indicate, however, that the Assessor changed the neighborhood classification of Fisher's property from "off-lake" to "on-lake." (See Cert. Admin. R. at 194.) Given that Fisher's property is in fact on the lake, the change was justified.

[6] The Court notes that in her written brief, Fisher proclaims that Indiana Code § 6-1.1-4-4.4 "requires proof of an inspection prior to assessment and mandates certain findings be established by [an assessing official] PRIOR TO changing an assessment." (Pet'r Br. at 12.) The statute imposes no such requirement or mandate, see I.C. § 6-1.1-4-4.4, and the Court will not expand its meaning by reading into it language that is not there. See Kohl's Dep't Stores, Inc. v. Indiana Dep't of State Revenue, 822 N.E.2d 297, 300 (Ind. Tax Ct. 2005).

7

b)

Fisher also contends that the Assessor failed to present a prima facie case because her appraisal was invalid and therefore not probative from the outset. Indeed, she explains that the appraisal's value conclusion does not comport with Indiana's market value-in-use standard because it did not value the property according to its current use as a public park. (See, e.g., Pet'r Br. at 12-14, 20-24.) Moreover, she explains that the Indiana Board even acknowledged that the appraisal failed to discount its value conclusion to account for the negative impact the easement had on the property's overall value. (See Pet'r Br. at 19, 25.)[7]

Fisher's contentions are mere restatements of the arguments she made to – and that were rejected by – the Indiana Board during the administrative process. (See, e.g., Cert. Admin. R. at 41 ¶¶ 42-43, 46 ¶¶ 59-61, 47-48 ¶¶ 64-65.) Consequently, Fisher is simply asking the Court to reevaluate the appraisal and find, contrary to the Indiana Board, that it carried no weight. The Court will not reweigh that evidence on appeal, however, absent a showing that the Indiana Board abused its discretion. See Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010).

To demonstrate an abuse of discretion, Fisher must show the Court that the Indiana Board's final determination is clearly against the logic and effect of the facts and circumstances before it. See Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d

---

[7] To the extent Fisher appears to argue that the Assessor's appraisal is invalid because it was completed after the assessment date at issue, (see Pet'r Br. at 12-14), her argument finds no support in the law. See, e.g., Shelbyville MHPI, LLC v. Thurston, 978 N.E.2d 527, 530 n.5 (Ind. Tax Ct. 2012); O'Donnell v. Dep't of Local Gov't Fin., 854 N.E.2d 90, 95 (Ind. Tax Ct. 2006) (holding that as long as an appraisal values property as of the valuation date at issue, "the date upon which the appraisal was completed has no bearing on its probative value").

8

311, 315 n. 5 (Ind. Tax Ct. 2010). In her presentation to the Court on this issue, Fisher explains that the appraisal is not probative because:

> If [the] Assessor had the burden to prove the correctness of the land value assessment of Subject Tract of $232,200 [sic.], was not a finding by the Indiana Board that the $232,200 [sic.] assessment has been proved for the reason that it was '. . . at least equal. . ." to the unreliable appraisals admit to an essential flaw to a purported finding of correctness?

(Pet'r Br. at 19 (citations omitted).) Likewise, she posits "[w]hy is not as logical to arbitrarily make a finding that $57,300 [sic.] was the valid and correct assessment because it was ['] . . . at least equal . . .['] to the evidence?" (Pet'r Br. at 19.)

These rhetorical questions do little to demonstrate to the Court that the Indiana Board acted against the logic and effect of the facts and circumstances before it when concluded that even with some flaws, the Assessor's appraisal still had probative value. See, e.g., Marion Cnty. Assessor v. Gateway Arthur, Inc., 43 N.E.3d 279, 280-81, 284-85 (Ind. Tax Ct. 2015) (explaining that a flaw in an appraisal does not render the entire appraisal per se invalid). Consequently, the Court will not reverse the Indiana Board's final determination on this basis.[8]

2.

Next, Fisher maintains that the Indiana Board improperly placed upon her the burden of proof with respect to her 2014 assessment appeal. (Pet'r Br. at 15-18.) As she explains:

> the 2013 assessment of her property was the same as 2012, $232,800;

---

[8] Fisher uses the same line of reasoning in an attempt to discredit the Assessor's appraisal valuing her property for 2014. (See, e.g., Pet'r Br. at 11-13, 19, 21.) The Court, applying its foregoing analysis, rejects that attempt.

given that she had already appealed the 2012 assessment, there was no need for her to appeal 2013: "the validity and standing of [the] 2013 assessment rested upon the correctness of the 2012 assessment as determined upon appeal";

"on the assumption that the 2012 assessment will be corrected by this court . . . the burden of proof of any increase greater than 5% of the 2012 assessment also imposes the burden of proof upon Assessor for the 2014 assessment."

(See Pet'r Br. at 16.)

For purposes of assessment in Indiana, property is valued annually. See generally IND. CODE § 6-1.1-1-2 (2012); IND. CODE §§ 6-1.1-4-4, -4.5, -4.6 (2012) (amended 2015, 2016, 2014 respectively). Consequently, in property assessment appeals at both the administrative and judicial levels, each tax year – and each appeals process – stands alone. See Barth, Inc. v. State Bd. of Tax Comm'rs, 699 N.E.2d 800, 805 n. 14 (Ind. Tax Ct. 1998). Because Fisher did not appeal her 2013 assessment, the Indiana Board did not err in determining that she bore the burden of proof with the respect to her 2014 appeal.[9]

3.

Finally, Fisher argues that the Indiana Board's final determination must be reversed because it failed to address the other evidence that was presented during the

---

[9] Fisher appears to argue in her written brief that because the certified administrative record does not contain evidence that a Form 11 notice was sent to her regarding the increase in her 2013 assessment over the 2011 assessment, her 2013 assessment is invalid. (See Pet'r Br. at 16-18.) Fisher is incorrect.

An assessing official is required to provide a taxpayer with notice of her property's value in both the year a general reassessment takes effect as well as in any year in which an interim assessment is made that changes the property's value from the previous year. See IND. CODE § 6-1.1-4-22 (2012). See also IND. CODE § 6-1.1-15-1 (2012) (explaining that this notice serves to trigger the taxpayer's right to challenge the reassessment or the change in assessment if she believes it to be erroneous). The value of Fisher's property changed between 2011 and 2012; it did not change between 2012 and 2013. Consequently, no Form 11 notice was required from the Assessor in 2013.

administrative hearing demonstrating that: a) public parks in Carroll County were assessed at only $25,000 an acre; b) the common areas of subdivisions are assessed at zero; and c) under an income approach to value, her lot should have only been assessed at about $61,000. (See Pet'r Br. at 23-24.) The Court finds that the Indiana Board's "failure" to address this evidence does not constitute reversible error for the following reasons.

a)

The certified administrative record does not demonstrate, as Fisher contends, that public parks in Carroll County are assessed at $25,000 an acre; rather, it indicates that the Delphi Community Park, which is located in a neighborhood where land is valued at approximately $25,000 per acre, received a property tax exemption as a public park because it was municipally-owned. (Compare Pet'r Br. at 24 (citing Cert. Admin. R. at 262, 544) with Cert. Admin. R. at 262, 544.) Moreover, to the extent Fisher alleges that her property is a public park, the Court will not substitute her conclusory statements for probative factual evidence that actually demonstrates that fact. See Knox Cnty. Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc., 826 N.E.2d 177, 184 (Ind. Tax Ct. 2005) (explaining that without probative evidence, an allegation remains a mere allegation). In other words, Fisher needed to prove that her property is a "public park." But see, e.g., WEBSTER'S THIRD NEW INT'L DICTIONARY 1642 (2002 ed.) (defining "park" as "a tract of land maintained by a city or town as a place of beauty or of public recreation" (emphasis added)), 1836 (defining "public land" as "land owned by a government" (emphasis added)); BLACK'S LAW DICTIONARY 1351 (9th ed.) (defining "public place" as "[a]ny location that the local, state, or national government maintains for the use of the

11

public, such as a highway, park, or public building" (emphasis added)); IND. CODE § 6-1.1-10-5 (2012) (providing that "[p]roperty is exempt from property taxation if it is <u>owned by a city or town</u> and is used to provide a municipal service" and that a "municipal service" includes, among other things, "a municipally owned park, golf course, playground, [or] swimming pool" (emphasis added)).

b)

Fisher refers the Court to pages 547 and 548 of the certified administrative record for evidence that "common area encumbered for use by a subdivision is assessed at zero[.]" (<u>See</u> Pet'r Br. at 24.) (<u>See</u> <u>also</u> Pet'r Br. at 2 (asserting that the easement "converted" her lot to "common area").) Those two pages contain the following testimonial discourse between the Assessor and her attorney during the Indiana Board hearing:

> [Assessor's Attorney]: What do you mean by "common area"?
>
> [Assessor]: Common area is – would be area that is included in a platted subdivision and they will leave some area empty for the use of the residents of that subdivision.
>
> [Assessor's Attorney]: And is there a – a requirement about common area by statute now?
>
> [Assessor]: Yes, by statute there is. According to statute, the common area is absorbed into the purchase prices of the individual[] lots as they are sold; and so therefore we are not allowed to put – we would have to put a minimal value on that portion of property, and I can't remember the I.C. Code right now.
>
> [Assessor's Attorney]: I think it was originally case law, if you will recall.
>
> [Assessor]: I think it was somewhere.

12

[Assessor's Attorney]: Yes. That common area had to be in a zero assessed value but that the value could be added to the residential properties.

(Cert. Admin. R. at 547-48.) This exchange, however, does nothing to prove that Fisher's lot is the "common area" of a subdivision.[10] In any event, while this Court has previously acknowledged that property can be so encumbered by easements or restrictions that it is rendered valueless, it has also explained that an objective, factual basis is necessary to sustain such a finding. See, e.g., Lakes of Four Seasons Property Owners' Ass'n v. Dep't Local Gov't Fin., 875 N.E.2d 833, 836-37 (Ind. Tax Ct. 2007) (indicating that because the streets owned by a subdivision's homeowner association could never be sold and did not generate income supported the conclusion that they had no value), review denied. Fisher has not provided the Court with any factual basis to support the conclusion that her property has no value; in fact, there is evidence in the administrative record that indicates otherwise. (See, e.g., Cert. Admin. R. at 3 (indicating that Fisher believes her property should be valued at $62,000), 211-13 (indicating that despite the easement's presence, Fisher's property can be sold), 215 (indicating that when Fisher sells her property, the Club has first right of refusal).)

c)

Fisher points the Court to pages 317, 318, and 476 of the certified administrative record for an "[i]ncome approach to permit valuation supporting [her] contended land valuation in 2012 and 2014 of $61,215[.]" (Pet'r Br. at 24 (citation omitted).) On those pages, the Assessor's appraiser testified that to do an income approach: "we'd find the

---

[10] Indeed, this exchange implies that common area is available for use by all the residents of a subdivision and is owned by all the residents. Nonetheless, the administrative record indicates that Fisher owns her lot outright and her easement is granted to only certain residents of her subdivision. (Compare Cert. Admin. R. at 103 with Cert. Admin. R. at 212.)

net income, whatever income was generated by the property, subtract the expenses, and come up with a net income and capitalize that net income." (Cert. Admin. R. at 317.) (See also Cert. Admin. R. at 282-87.) The Assessor's appraiser also testified that he believed a 6% capitalization rate would be appropriate for Carroll County in 2012, and a 4.5% capitalization rate would be appropriate for 2014. (Cert. Admin. R. at 317-18.) Finally, an officer of the Club testified how much the Club paid for lawn care, trash pick-up, and toilet rental for Fisher's lot in 2012 and 2013. (Cert. Admin. R. at 476.) (See also Cert. Admin. R. at 469-71.)

While these are all "pearls" of information relevant to performing an income approach, it was Fisher's responsibility – not the Indiana Board's – to string them together and actually form the necklace (i.e., to do an income approach). Given that there is no necklace, the Court will not craft one for her now. See, e.g., Clark v. Dep't of Local Gov't Fin., 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct. 2002) (explaining that litigants must walk both the Indiana Board and the Court through every element of their analyses; it is not enough for litigants to claim they made their case by simply citing to portions of the record as though they speak for themselves).

## CONCLUSION

The final determination in this case reveals that the Indiana Board, as an impartial adjudicator, considered the parties' evidentiary presentations, weighed their probative value, and concluded that the Assessor's appraisal corroborated her assessment by best reflecting the market value-in-use of Fisher's lot. The Court finds no basis for reversing the Indiana Board's conclusion and, therefore, its final determination is AFFIRMED.

14