ATTORNEYS FOR PETITIONER:
**BRENT A. AUBERRY**
**BENJAMIN A. BLAIR**
FAEGRE BAKER DANIELS LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**BENJAMIN J. LEGGE**
**WINSTON LIN**
**ALEKSANDRINA P. PRATT**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

May 18 2018, 2:22 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | | |
|---|---|---|
| NOVA TUBE INDIANA II LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1708-TA-00013 |
| | ) | |
| CLARK COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 18, 2018**

WENTWORTH, J.

Nova Tube Indiana II, LLC appeals the Indiana Board of Tax Review's final determination, which upheld the assessments of its real property for the 2011, 2012, and 2013 tax years. Upon review, the Court reverses the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

During the years at issue, Nova Tube owned two parcels of land in Clark County, Jeffersonville, Indiana. (See Cert. Admin. R. at 451-59.) Together, the parcels were comprised of 29.1 acres of land with rail spurs that provided access to the nearby railroad

and a 109,443 square foot industrial warehouse. (See Cert. Admin. R. at 195, 215, 616-17, 622-624.)

In 2010, the property was assessed at $2,245,900. (See Cert. Admin. R. at 452, 459.) In 2011, however, the Clark County Assessor increased the property's assessment by over 50%, assigning it a total assessed value of $4,653,100. (See Cert. Admin. R. at 452, 459, 522.) Over the next two years, the property's assessments increased incrementally, with it being assessed at $4,767,200 in 2012 and $4,767,300 in 2013. (See Cert. Admin. R. at 522-23.)

On October 3, 2013, Nova Tube appealed its assessments for the years at issue to the Clark County Property Tax Assessment Board of Appeals (the PTABOA). In May of 2014, while the appeals were still pending with the PTABOA, Nova Tube sold the property to the Port of Indiana for $6,125,000. (See Cert. Admin. R. at 650-54.) The PTABOA subsequently affirmed all three of Nova Tube's assessments.

Nova Tube appealed the PTABOA's determinations to the Indiana Board on July 18, 2014. After conducting a hearing on the appeals, the Indiana Board issued a final determination in the matter on June 30, 2017. In that final determination, the Indiana Board explained that with respect to the 2011 appeal, the Assessor bore the burden of proving that the assessment increase was correct under Indiana Code § 6-1.1-15-17.2.[1] (See Cert. Admin. R. at 97-98 ¶ 36.) The Indiana Board then determined that the Assessor met her burden because the evidence that the property was sold in a "market

---

[1] Indiana Code § 6-1.1-15-17.2, commonly referred to as "the burden-shifting rule," provides that if the assessment of the same property increases by more than 5% from one year to the next, the assessor bears the burden of proving that the assessment is correct. See Orange Cnty. Assessor v. Stout, 996 N.E.2d 871, 873 (Ind. Tax Ct. 2013); IND. CODE § 6-1.1-15-17.2 (2014). Compare with IND. CODE § 6.1.1-15-1(l) (2014) (explaining that otherwise, the taxpayer bears the burden of demonstrating that the assessment is incorrect) (repealed 2017).

value" transaction in May 2014 and that the market was relatively stable during the years at issue supported her assessment values. (See Cert. Admin. R. at 97 ¶¶ 34-35, 99-102 ¶¶ 41-46.) Consequently, the burden shifted to Nova Tube to rebut the Assessor's prima facie case. (See Cert. Admin. R. at 101-02 ¶ 46.)

In its rebuttal presentation, Nova Tube asserted that the May 2014 sale was not a market value transaction because the buyer, the Port of Indiana, was atypically motivated given that it was a government entity that already owned "the vast majority of the land in that area[,]" including land adjacent to Nova Tube's property. (See Cert. Admin. R. at 100-01 ¶ 43, 651-57.) Nova Tube also asserted that the Assessor had admitted that the May 2014 sales price did not actually reflect the property's market value-in-use because the property record cards stated that the sale was "invalid." (See, e.g., Cert. Admin. R. at 596-601, 656-57.) Finally, Nova Tube presented an appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP), that valued the property at $2,900,000 for 2011. (See, e.g., Cert. Admin. R. at 194-280, 561-62, 644-806.)

The Indiana Board weighed the competing evidence and determined that Nova Tube did not persuasively rebut the Assessor's prima facie case, explaining that the lack of support for certain adjustments and valuations in Nova Tube's 2011 appraisal, particularly the land valuations, had diminished its probative value. (See Cert. Admin. R. at 102-03 ¶¶ 47-53.) Consequently, the Indiana Board upheld the property's 2011 assessment of $4,653,100. (See Cert. Admin. R. at 100-05 ¶¶ 43-46, 54-57.)

With respect to Nova Tube's 2012 and 2013 appeals, the Indiana Board did not state which party bore the burden of proof; rather, it stated that the Assessor had made

3

a prima facie case for 2012 and 2013 by using the same evidence offered to support her 2011 assessment. (See Cert. Admin. R. at 101-02 ¶ 46.) The Indiana Board determined that Nova Tube's 2012 and 2013 appraisals, which valued the property at $3,000,000 for 2012 and $3,100,000 for 2013, did not persuasively rebut the Assessor's prima facie case because they suffered from the same infirmities as its 2011 appraisal. (See Cert. Admin. R. at 101-04 ¶¶ 46-53, 55.) (See also Cert. Admin. R. at 836-37, 859-60.) Accordingly, the Indiana Board also upheld the property's 2012 assessment of $4,767,200 as well as its 2013 assessment of $4,767,300. (See Cert. Admin. R. at 104-05 ¶ 57.)

On July 17, 2017, Nova Tube filed a Request for Rehearing. (See Cert. Admin. R. at 106-17.) On July 31, 2017, the Indiana Board denied Nova Tube's Request for Rehearing. (See Cert. Admin. R. at 123-26.)

On August 11, 2017, Nova Tube initiated this original tax appeal. The Court heard oral argument on February 14, 2018. Additional facts will be supplied if necessary.

## STANDARD OF REVIEW

The party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Thus, Nova Tube must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2018).

**ANALYSIS**

On appeal, Nova Tube asks the Court to reverse the Indiana Board's final determination, claiming it is contrary to law, unsupported by substantial or reliable evidence, and constitutes an abuse of discretion. (See, e.g., Oral Arg. Tr. at 11; Pet'r Initial Br. ("Pet'r Br.") at 15-16, 21-22.) More specifically, Nova Tube contends that the Indiana Board erred in upholding the assessments because the Assessor did not meet her initial burden of proving that the assessment increases were correct given that: 1) she failed to demonstrate that the property sold in a market value transaction in May 2014; and 2) she failed to relate the property's May 2014 sales price to the relevant valuation dates.[2] (See Pet'r Br. at 12-22; Pet'r Reply Br. at 13-14.)

## 1. Market Value Transaction

During the years at issue, Indiana defined "market value" for purposes of its property tax assessment system as:

> The most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

2011 REAL PROPERTY ASSESSMENT MANUAL ("2011 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 5-6. The definition specified the conditions required for fair sales, including that the buyer and seller be typically motivated, without

---

[2] Nova Tube also claims that the Indiana Board violated a fundamental appraisal principle by finding that the May 2014 sale corroborated the assessment increases because the evidence failed to indicate whether it was reasonable to deem a sale occurring up to three years after the relevant valuation dates as probative of the property's market value-in-use for the years at issue. (See Pet'r Initial Br. ("Pet'r Br.") at 22-25.) The Court will not address this issue because the case is resolved on other grounds.

duress, compulsion, or pressure to act. See id. Accord 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) ("2002 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.) (repealed 2010)) at 10 (defining "market value"); Marion Cnty. Assessor v. Simon DeBartolo Group, LP, 52 N.E.3d 65, 70-71 (Ind. Tax Ct. 2016) (construing Indiana's definition of market value); INT'L ASS'N OF ASSESSING OFFICERS, PROPERTY ASSESSMENT VALUATION 100 (2nd ed. 1996) (stating that market value sales require, among other things, that buyers and sellers be typically motivated).

Nova Tube accordingly maintains that to establish that a sale is a market value transaction one must, among other things, show that the parties to the transaction are typically motivated. (See Pet'r Br. at 12; Pet'r Reply Br. at 10-11.) Nova Tube claims that because the evidence in this case indisputably showed that the buyer, the Port of Indiana, was atypically motivated, the Indiana Board abused its discretion in finding that the May 2014 sale was a market value transaction. (See, e.g., Pet'r Reply Br. at 1; Oral Arg. Tr. at 11.) Indeed, Nova Tube maintains the Port of Indiana's atypical motivation was manifest given its status as both a government entity and adjacent landowner. (See, e.g., Pet'r Reply Br. at 7-11.) Moreover, Nova Tube claims that the parties' expert witnesses agreed that the Port of Indiana was atypically motivated during the administrative hearing and that the Assessor tacitly conceded the point by noting on the property record cards that the sale was "invalid" for purposes of the mass appraisal process. (See Pet'r Br. at 15-20.) Nova Tube further asserts that the Assessor failed to rebut its evidence because she focused on factors unrelated to a buyer's atypical motivation, namely whether the property was sold in an "arm's length" or "open market" transaction. (See Pet'r Br. at 13-16; Pet'r Reply Br. at 9-11.) Nova Tube's claims, however, are unpersuasive for three

6

reasons.

First, the certified administrative record reveals that both parties' expert witnesses stated that the mere fact that one of the parties to a transaction is a government entity or adjacent landowner does not in itself demonstrate that the party is atypically motivated. (See, e.g., Cert. Admin. R. at 905-07, 937-39, 967, 972-78 (providing that sales to government entities and adjacent landowners may be used to appraise property under certain conditions, e.g., after researching the sale to verify that it reflects a property's market value).) Moreover, the International Association of Assessing Officers' 2007 Standard on Ratio Studies provides that sales to government agencies may be used in performing a ratio study[3] after researching the sales to verify that they are market value transactions. (See Cert. Admin. R. at 114.) Here, the Assessor initially deemed the May 2014 sale of the subject property invalid for use in the mass appraisal/ratio study process presumably because the sales disclosure form indicated that the buyer was both a government entity and adjacent landowner. (See Cert. Admin. R. 469-72, 955-68.) Upon a more in-depth investigation, however, she determined that the May 2014 sale was equivalent to a market value transaction that supported her assessment increases. (See Cert. Admin. R. at 976-77, 1009-10.)

Second, while Nova Tube asserts that the parties' expert witnesses agreed that the Port of Indiana was atypically motivated, it has not cited the portion of the record containing that agreement, (see generally, e.g., Pet'r Br.), and this Court's review of the

---

[3] A ratio study is "[a] study of the relationship between [properties'] appraised or assessed values and market values. Indicators of market values may be either sales (sales ratio study) or independent 'expert' appraisals (appraisal ratio study). Of common interest in ratio studies are the level of uniformity of the appraisal or assessments." 2011 REAL PROPERTY ASSESSMENT MANUAL ("2011 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 6.

record uncovered no such agreement. The totality of the evidence, therefore, does not support Nova Tube's claim that the Assessor's notation on the property record cards was an admission of the Port of Indiana's atypical motivation and her acknowledgment that the May 2014 sales price was inconsistent with the property's market value for all purposes. (See Pet'r Br. at 16-19; Oral Arg. Tr. at 33.)

Finally, the parties offered conflicting evidence on the issue of whether the property's May 2014 sale constituted a market value transaction. (Compare, e.g., Cert. Admin. R. at 650-54 with Cert. Admin. R. at 972-76.) Nova Tube presented evidence that indicated the May 2014 sale was not a market value transaction. (See, e.g., Cert. Admin. R. at 650-54, 656-57, 1026-28 (indicating that the Port of Indiana was the sole party interested in purchasing the property, that its business model was to purchase all nearby land to control its use, and that the property record cards stated that the May 2014 sale was "invalid").) Conversely, the Assessor presented evidence that: a) the property's asking price of $6,950,000 was based on an independent appraisal, b) the property sold after being on the market for 373 days, c) there were "a number of lookers[,]" d) the property ultimately sold for $825,000 less than the asking price, and e) the personal property (i.e., cranes) advertised as part of the sale were not actually included in the sale. (See Cert. Admin. R. at 473-76, 972-76, 1007-09.) The record indicates that the Indiana Board considered and weighed the competing evidence, making its finding based on the facts and circumstances before it. Thus, this Court cannot reweigh the evidence on this issue and replace the Indiana Board's finding with one of its own. See, e.g., Hubler Realty Co. v. Hendricks Cnty. Assessor, 938 N.E.2d 311, 315 n.5 (Ind. Tax Ct. 2010) (providing that an abuse of discretion occurs when the Indiana Board either misinterprets the law or

8

acted clearly against the logic and effect of the facts and circumstances before it). Accordingly, the Court finds that the Indiana Board's determination is supported by substantial evidence, and it did not abuse its discretion in finding that Nova Tube's property sold in a market value transaction in May 2014.

### 2. Relationship to the Valuation Dates

Nova Tube also claims that the Indiana Board abused its discretion in finding, contrary to law, that the May 2014 sales price was sufficiently related to each of the relevant valuation dates because the Assessor did not trend that sale and affirmatively link the sales price to the valuation dates. (See Pet'r Br. at 22-23; Pet'r Reply Br. at 13-14; Oral Arg. Tr. at 29-31.) "Trending" is the process that applies an adjustment factor[4] to the value of a property to estimate its market value-in-use on a specific date. See, e.g., 50 IND. ADMIN. CODE 27-5-1 (2018).

The Assessor, on the other hand, contends that Nova Tube's claim is meritless because she demonstrated to the Indiana Board that trending was unnecessary. (See, e.g., Cert. Admin. R. at 516.) More specifically, the Assessor explains that she presented evidence that the rate of growth in the market ranged from only 0% to 1% between 2011 and 2013, as the market continued to recover from the recession, and that the pattern of limited growth continued in 2014. (See Resp't Br. at 14-15; Oral Arg. Tr. at 39-45.)

When, as here, a taxpayer appeals an assessment that increased by more than 5% from one year to the next, Indiana Code § 6-1.1-15-17.2 automatically shifts the

---

[4]  In determining the adjustment factor, assessing officials typically use sales of properties in certain neighborhoods, areas, or classes that "ideally [occurred] not more than fourteen (14) months before the March 1 assessment and valuation date."  50 IND. ADMIN. CODE 27-5-2(a) (2018).

burden of proof[5] from the taxpayer to the assessing official. See IND. CODE § 6-1.1-15-17.2 (2014). Accordingly, the assessing official bears the initial burden of proving to the Indiana Board that the assessment increase, and thus the assessment, is correct. See id. To meet its initial burden, the assessing official must submit evidence relevant to the property's market value-in-use (i.e., the property's value "for its current use, as reflected by the utility received by the owner or by a similar user, from the property") for the appropriate valuation date.[6] See 2011 Manual at 2 (stating that March 1 is the valuation date for the years at issue). Consequently, the Assessor had to demonstrate that the evidence supporting her assessment increases reflected the subject property's market value-in-use as of the March 1, 2011, 2012, and 2013 valuation dates as a matter of law. See 2011 Manual at 2.

In support of her assessment increases, the Assessor provided information about general industrial market trends, residential demographics (e.g., population, income, and sales activities), and building permits issued between 2009 and 2013.[7] (See Cert. Admin. R. at 477-508, 980-81, 989-98.) Her evidence also indicated that the market was recovering from the recession between 2009 and 2014. (See Cert. Admin. R. at 125,

---

[5] For purposes of Indiana Code § 6-1.1-15-17.2, the term "burden of proof" refers to the burden of production (i.e., "'[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against [it] in a peremptory ruling'"). See Peters v. Garoffolo, 32 N.E.3d 847, 852 n.6 (Ind. Tax Ct. 2015) (citations omitted).

[6] Indeed, it is well-established that when a taxpayer challenges the accuracy of an assessment, he likewise must show that his evidence reflects his property's market value-in use as of the appropriate valuation date. See, e.g., Marion Cnty. Assessor v. Simon DeBartolo Group, LP, 52 N.E.3d 65, 69-70 (Ind. Tax Ct. 2016); Big Foot Stores LLC v. Franklin Twp. Assessor, 919 N.E.2d 621, 625-26 (Ind. Tax Ct. 2009); O'Donnell v. Dep't of Local Gov't Fin., 854 N.E.2d 90, 95 (Ind. Tax Ct. 2006).

[7] While the Indiana Board's transcript indicates that this evidence is contained in Respondent's Exhibit G, the actual exhibit is marked as Respondent's Exhibit C. (See, e.g., Cert. Admin. R. at iii, 477, 978-79.)

493, 995-97.) The Assessor's evidence showed both that the market was relatively stable from 2009 to 2014 (no more than 1% annual rate of growth in real estate values from 2011 to 2013) and that the difference between the property's 2013 assessment of $4,653,100 and its 2014 sales price of $6,125,000 represented roughly a 22% increase in value. (See, e.g., Oral Arg. Tr. at 43.) Nonetheless, the Assessor's evidence failed to show that the property's May 2014 sales price was directly related to any of the appropriate valuation dates for the years at issue. Moreover, the evidence did not indicate why the property's 2011 assessment of $4,653,100, which was more than double its 2010 assessment of $2,245,900, was correct given that the evidence showed that the market's general growth was relatively flat from 2009 to 2014.

The Assessor also urges the Court to affirm the Indiana Board's finding as to this issue based on the proximate relationship between the property's assessments of $4,653,100 in 2011, $4,767,200 in 2012, and $4,767,300 in 2013 and its May 2014 sales price of $6,125,000. (See Oral Arg. Tr. at 43-45.) The Assessor explains that the 22% increase in value from one year to the next is of little consequence because all these figures are close in value. (See Oral Arg. Tr. at 43-45.) The Assessor further states that to the extent the property was overvalued when it sold in May 2014, that fact would simply increase the reliability of her assessments because she did not request that the property be assessed at that higher value. (See Resp't Br. at 14.) Consequently, the Assessor claims that the Indiana Board, consistent with both its own and this Court's case law, appropriately relied on an objective indicator of value (i.e., the May 2014 sales price) and the figures closer to the objective measure rather than the figures derived from three subjective indicators of value (i.e., Nova Tube's appraisals). (See Resp't Br. at 12-15

11

(citing Hubler Realty Co. v. Hendricks Cnty. Assessor, Nos. 32-012-06-1-4-00015, et al., (Ind. Bd. Tax Review Dec. 17, 2009); Fisher v. Carroll Cnty. Assessor, 74 N.E.3d 582 (Ind. Tax Ct. 2017)).) The Assessor's claims, however, are unpersuasive for the following reasons.

Initially, while the property's May 2014 sales price and the assessments at issue are relatively close in value, it is equally true that the property's 2010 assessment of $2,245,900 and its appraised values of $2,9000,000 for 2011, $3,000,000 for 2012, and $3,100,000 for 2013 are similarly close in value. Thus, the mere proximity of certain figures does not indicate whether an assessment reflects a property's market value-in-use as of a specific valuation date.

In addition, the cases that the Assessor cited as support for her position are not persuasive here because their facts and issues on appeal fundamentally differ from the facts and issues on appeal in this case. Specifically, in Hubler Realty the Indiana Board found that the parties' evidence, which consisted of an appraisal and sales data, was probative because the stated valuations were deemed to be contemporaneous to the relevant valuation date (i.e., within three to five months of the relevant valuation date). See Hubler Realty, No. 32-012-06-1-4-000115, slip op., at 7 ¶ 15(g). The Indiana Board's finding as to the probative value of that evidence was not challenged on appeal. See Hubler Realty, 938 N.E.2d at 313-14. In this case, however, the Indiana Board did not base the probative value of the May 2014 sales price on a temporal proximity to the March 1 valuation dates at issue. Moreover, the Indiana Board's finding regarding the probative value of the May 2014 sales evidence has been challenged on appeal due in large part to this lack of proximity and failure to analyze the direct relationship between that sale

12

and each of the March 1 valuation dates. Accordingly, Hubler Realty does not support the Assessor's position.

With respect to the Fisher case, the Court upheld an assessing official's assessment increases because they were corroborated by her market-based evidence: i.e., two appraisals that valued a taxpayer's property on the relevant valuation dates for amounts that exceeded both assessments. See, e.g., Fisher, 74 N.E.3d at 585-86. In this case, however, the Assessor's market-based evidence, the May 2014 sales data, only indicates the value of Nova Tube's property on the date of sale because the Assessor did not trend that sale or provide other market-based evidence that affirmatively related the sales price to the March 1 valuation dates. Accordingly, Fisher does not support the Assessor's position either. Therefore, the Court finds that the Indiana Board abused its discretion by finding that the May 2014 sales price was sufficiently related to each of the March 1 valuation dates. See Peters v. Garoffolo, 32 N.E.3d 847, 852 (Ind. Tax Ct. 2015) (providing that a prima facie case is one in which the evidence is "'sufficient to establish a given fact and which if not contradicted will remain sufficient'" (citation omitted).) Consequently, the Assessor did not meet her initial burden of proving that her assessment increases were correct.

Indiana Code § 6-1.1-15-17.2 provides that when an assessing official fails to meet her burden of proof, a taxpayer may present evidence to prove the actual market value-in-use of its property. See I.C. § 6-1.1-15-17.2(b). During the administrative hearing, Nova Tube offered three appraisals to establish that its property should be valued at $2,9000,000 for 2011, $3,000,000 for 2012, and $3,100,000 for 2013. (See, e.g., Cert. Admin. R. at 194-450.) The Indiana Board found that each of the appraisals, despite

13

certain flaws, had probative value. (See Cert. Admin. R. at Cert. Admin. R. at 103-04 ¶¶ 54-55.) While the Assessor has restated the Indiana Board's criticisms of Nova Tube's appraisals on appeal, she has not challenged the Indiana Board's finding as to their overall probative value. (Compare Resp't Br. at 15-17 with Cert. Admin. R. at 102-03 ¶¶ 47-53.) Therefore, the Court concludes that Nova Tube's property should be assessed at $2,9000,000 for 2011, $3,000,000 for 2012, and $3,100,000 for 2013.

## CONCLUSION

For the forgoing reasons, the final determination of the Indiana Board is REVERSED. The matter is REMANDED to the Indiana Board so that it may instruct the appropriate assessing officials to assess the subject property consistent with this opinion.