**MERIDIAN TOWERS EAST & WEST, A Limited Liability Company, Petitioner,**

v.

**WASHINGTON TOWNSHIP ASSESSOR, Marion County, Respondent.**

No. 49T10–0206–TA–58.

Tax Court of Indiana.

Dec. 23, 2003.

Publication Ordered March 25, 2004.

Sandra K. Bickel, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Meridian Towers East & West, a Limited Liability Company (Meridian), appeals the Indiana Board of Tax Review's (Indiana Board) final determination valuing its real property for the 1998 tax year. The issue is whether Meridian's improvements should have been awarded a 74% obsolescence depreciation adjustment. For the following reasons, the Court REVERSES the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

Meridian owns two apartment buildings, known as Meridian Towers Apartments, in Indianapolis, Indiana. For the 1998 assessment year, the Washington Township

Assessor (Assessor) applied a 10% obsolescence depreciation adjustment to each of Meridian's buildings. Meridian appealed its assessments to the Marion County Board of Review (BOR); the Marion County Property Tax Assessment Board of Appeals[1] (PTABOA) denied Meridian's appeals.

Meridian appealed the PTABOA's denial to the State Board of Tax Commissioners (State Board), alleging that the buildings were entitled to additional obsolescence depreciation. On April 18, 2002, following an administrative hearing, the Indiana Board[2] issued a final determination[3] denying Meridian's requested relief.

On June 3, 2002, Meridian initiated an original tax appeal. On September 3, 2003, this Court heard the parties' oral arguments. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals,* 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court may reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33-3-5-14.8(e)(1)-(5) (West Supp.2003). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *See Osolo Township Assessor v. Elkhart Maple Lane Assocs., L.P.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

### Discussion

■ Meridian contends that the Indiana Board erred when it upheld the Assessor's refusal to award additional obsolescence depreciation to its improvements. Meridian is correct.

■ Obsolescence is the functional or economic loss of property value; it is expressed as a percentage reduction in the

---

1. Meridian initially filed its appeals with the Marion County Board of Review (BOR) on May 8, 1998. However, the Legislature reconstituted all county boards of review as of January 1, 1999, replacing them with "property tax assessment boards of appeal." *See, e.g.,* 1997 Ind. Acts 6 § 71 (codified as amended at IND.CODE § 6-1.1-15-1 (West Supp. 2003)). Consequently, the Marion County Property Tax Assessment Board of Appeals (PTABOA) heard Meridian's appeals on November 4, 1999.

2. On December 31, 2001, the legislature abolished the State Board of Tax Commissioners (State Board). 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. IND.CODE §§ 6-1.5-1-3; 6-1.5-4-1; 2001 Ind. Acts 198 § 95. Thus, when the final determination was issued on Meridian's appeals in April 2002, it was issued by the Indiana Board.

3. Meridian appealed the assessment of two separate parcels; the Indiana Board conducted a consolidated hearing and issued one final determination.

remaining value of the subject improvement. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1238 (Ind. Tax Ct.1998) (*"Clark I"*). *See also* IND. ADMIN. CODE tit. 50, r. 2.2–10–7(f) (1996). Functional obsolescence is caused by factors internal to the property; economic obsolescence is caused by external factors. *See* IND. ADMIN. CODE tit. 50, r. 2.2–10–7(e) (1996).

■ In order to make a prima facie case for obsolescence, a taxpayer bears the burden of identifying causes of obsolescence as well as quantifying the amount of obsolescence to be applied to its improvements. *See Clark v. State Bd. of Tax Comm'rs*, 742 N.E.2d 46, 51 (Ind. Tax Ct.2001) (*"Clark II"*), *review denied.* In this case, both Meridian and the Assessor agreed that causes of obsolescence existed within Meridian's improvements. (*See* Cert. Admin. R. at 158–59.) Accordingly, Meridian was required to quantify the amount of obsolescence depreciation to be applied to its improvements. *See Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) (stating that when parties agree as to the existence of certain causes of obsolescence, the only issue to consider is the quantification of obsolescence).

■ To quantify the amount of obsolescence to which it believes it is entitled, a taxpayer may use professional appraisal techniques. *See Clark I*, 694 N.E.2d at 1242 n. 18. At the administrative hearing, Meridian presented a "Property Tax Consultation Report" (Appraisal). The Appraisal was prepared by Douglas E. Rogers, a Certified General Real Estate Appraiser. The Appraisal first describes how the location, lack of tenancy, and "inferior state of renovation" have caused Meridian's improvements to suffer an actual loss in value. (Cert. Admin. R. at 111, 117–18.) To translate that loss of value into an obsolescence adjustment, the Appraisal then compares the fair market value[4] of Meridian's improvements as calculated under both the cost approach and income capitalization approach.[5]

Under the cost approach, the cost to construct a replacement of the existing structure is estimated, less deductions for all accrued depreciation present in the property being appraised. *See Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 805 (Ind. Tax Ct.1998). *See also Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 212–13 (Ind. Tax Ct.2000), *review denied; S. Indiana Gas and Elec. Co. v. Russell*, 451 N.E.2d 673, 676 (Ind. Ct. App.1983). In using this approach, the Appraisal calculates the total cost to reproduce Meridian's improvements as $13,642,870. (*See* Cert. Admin. R. at 120–21.) The improvements were valued using the "Marshall & Swift Valuation Service" cost index, with adjustments in the base price for

---

4. In 1998, Indiana did not assess property on the basis of its fair market value. *See Town of St. John v. State Bd. of Tax Comm'rs*, 665 N.E.2d 965, 966–67 (Ind. Tax Ct.1996), *rev'd on other grounds*, 675 N.E.2d 318 (Ind.1997). Nonetheless, "[the determination of] obsolescence [under Indiana's true tax value system] obviously incorporates market value concepts. Therefore, a market value estimate is appropriate in the context of obsolescence. There is really no choice in this matter: the Court (and taxpayers) must accept quantifications ... [that] use market concepts." *Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 806 n. 8 (Ind. Tax Ct.1998).

5. This Court and the Indiana Court of Appeals have approved the use of the cost approach and income capitalization approach as methods of determining a property's fair market value. *See id.* at 805; *see also Scott–Reitz Ltd. v. Rein Warsaw Assocs.*, 658 N.E.2d 98, 105 (Ind.Ct.App.1995).

differences in the heating and cooling system, basement parking garages, and presence of balconies and canopies. (Cert. Admin. R. at 119.) After deducting $6,821,434 in physical depreciation, the Appraisal concludes that the total replacement cost of Meridian's improvements is $6,820,000. (Cert. Admin. R. at 120–21.)

Under the income capitalization approach, the fair market value of a property is determined by capitalizing the net income that the property produces; the process of capitalization converts net income at a reasonable rate of return to arrive at an overall indication of value. *See Lacy Diversified Indus., Ltd. v. Dep't Local Gov't Fin.*, 799 N.E.2d 1215, 1223 (Ind. Tax Ct.2003). *See also Lucre Corp. v. County of Gibson*, 657 N.E.2d 150, 153 (Ind.Ct.App.1995), *trans. denied.* Under the income capitalization approach, the Appraisal calculates the net income for Meridian's improvements at $871,439. (*See* Cert. Admin. R. at 125.) The Appraisal applied a 12% capitalization rate to Meridian's net income, and arrived at an estimated fair market value of $1,765,000. (Cert. Admin. R. at 125.)

In comparing the value of the improvements based on the cost approach and the income capitalization approach, the Appraisal attributed the difference— $5,055,000, or 74% of the total replacement cost of the improvements (after physical depreciation)—to obsolescence. (Cert. Admin. R. at 126.) Accordingly, Meridian contends that it is entitled to a 74% obsolescence reduction against its improvements' true tax value.[6] As this Court has

previously held, this is a valid methodology for estimating obsolescence. *See Canal Square*, 694 N.E.2d at 807. *See also Thorntown Tel. Co., Inc. v. State Bd. of Tax Comm'rs*, 588 N.E.2d 613, 619 (Ind. Tax Ct.1992).

By introducing an appraisal quantifying obsolescence in accordance with generally recognized appraisal principles, Meridian established a prima facie case that its improvements were entitled to a 74% obsolescence depreciation adjustment.[7] *See Canal Square*, 694 N.E.2d at 807. Thus, it was incumbent on the Assessor to rebut Meridian's prima facie case. *See Clark I*, 694 N.E.2d at 1233 (stating that once a taxpayer presents a prima facie case, it must be rebutted with substantial evidence). This the Assessor did not do.

At the administrative hearing, the Assessor questioned Rogers regarding the sources of his calculations and various statements made in the Appraisal. In none of these exchanges, however, did the Assessor offer evidence rebutting the validity of Rogers' calculations or offer alternate calculations of his own. Rather, he merely asked open-ended questions; for instance:

> When you did the [potential] gross income, is there a reason you didn't use any information from the apartment association? I mean it just says Institute of Real Estate Management apartment survey.

> \* \* \* \* \*

> In your financial information you stated you had [zero] in bad debts and collec-

---

6. In 1998, "[i]n Indiana, real property [wa]s assessed on the basis of its true tax value. True tax value does not mean fair market value ... but rather the value determined under the rules of the state board of tax commissioners." *Town of St. John*, 665 N.E.2d at 966–67 (internal quotations and citations omitted).

7. This is because the Indiana property assessment regulations' definition of obsolescence is tied directly to that applied by professional appraisers under the cost approach. *Canal Square*, 694 N.E.2d at 806; *see also* IND. ADMIN. CODE tit. 50, r. 2.2–10–7 (1996).

tions and your average lease rent to street rent was 92% and that is only 7% off the normal average. Doesn't that seem [like] that it is in accordance with rents [ ] applicable in that area[?]

(Cert. Admin R. at 200, 206.)

In addition, the Assessor also submitted a glossary definition for the term "net operating income"; a "Standards for the Application of Obsolescence" used by Marion County assessing officials; and the Indianapolis Business Journal's 1998 "Most–Expensive Indianapolis–Area Apartment Communities" list. (*See* Cert. Admin. R. at 150–52.) The Assessor explained that the glossary definition, obtained at an appraisal course he attended, defined net operating income as "the income expected from a property after deduction of allowable operating expense[.]" (Cert. Admin. R. at 210.) The Assessor then stated, "I think the key word is expected, not promised." (Cert. Admin. R. at 210). The Assessor also stated that the 10% obsolescence adjustments Meridian received were in accordance with the application standards, and he wondered why Meridian declined to participate in the apartment listing. (Cert. Admin. R. at 210–11.) Such statements fail to impeach or rebut Meridian's evidence quantifying obsolescence depreciation at 74%. Consequently, the Assessor failed to rebut Meridian's prima facie case.

Nevertheless, the Indiana Board determined that Rogers' calculations were "severely flawed" based on its own interpretation of appraisal standards. (*See* Cert. Admin. R. 46–54.) For instance, the Indiana Board disputed the capitalization rate Rogers used in the Appraisal. In so doing, the Indiana Board relied on an IAAO [8] treatise, PROPERTY ASSESSMENT VALUATION (2nd ed.1996). (*See* Cert. Admin. R. at 52 (discussing that the method by which Rogers' calculated a 12% capitalization rate was not mentioned in the IAAO treatise).) However, the Indiana Board's rejection of Meridian's evidence was erroneous.

The burden was on the Assessor, not the Indiana Board, to rebut Meridian's prima facie case. Because the Assessor did not introduce the IAAO treatise to dispute Rogers' capitalization rate, the Indiana Board was precluded from relying on it in making its final determination. *See* IND. CODE § 6–1.1–15–4(j) (West Supp.2003) (stating that findings of the Indiana Board "must be based exclusively upon the evidence on the record in the proceedings and on matters officially noticed in the proceeding"). In essence, the Indiana Board exceeded its statutory authority by attempting to make the Assessor's case for him. *See* IND.CODE § 6–1.5–4–1(a) (West Supp.2003) (stating that the Indiana Board shall conduct an impartial review of all appeals concerning the assessed valuation of tangible property made from a determination by an assessing official or a county property tax assessment board of appeals).[9]

The Assessor failed to rebut Meridian's quantification of obsolescence; the Indiana Board was without authority to do so on its own. Consequently, the Indiana Board's final determination cannot stand. *See Canal Square,* 694 N.E.2d at 805 (stating that a final determination based on unsupported conclusions or findings will be reversed).

8. The International Association of Assessing Officers (IAAO) is an educational and research association of individuals in the assessment/property taxation profession.

9. Furthermore, by relying on evidence outside the record, the Indiana Board denied Meridian the opportunity to rebut with evidence in support of its calculations.

## CONCLUSION

For the reasons stated above, the Court REVERSES the final determination of the Indiana Board and REMANDS it to the Indiana Board in order to instruct the local assessing officials to award Meridian's improvements with a 74% obsolescence adjustment.

## *ORDER*

The Petitioner in the above-captioned case has filed a Motion for Publication of Opinion in this matter. The Court, having considered the same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Petitioner's "Motion for Publication of Order" is granted and this Court's opinion handed down in this cause on December 23, 2003, marked "Not For Publication" is now ordered published.