ATTORNEYS FOR PETITIONER:
**MATTHEW S. CARR**
**JACOB V. BRADLEY**
**COURTNEY S. FIGG**
QUARLES & BRADY LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ZACHARY D. PRICE**
**KELLY S. THOMPSON**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

FILED

Dec 14 2018, 10:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| WIGWAM HOLDINGS LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 18T-TA-00015 |
| | ) |
| MADISON COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON PETITIONER'S PETITION TO
## ENJOIN THE COLLECTION OF TAX

**FOR PUBLICATION**
**December 14, 2018**

WENTWORTH, J.

Wigwam Holdings LLC has appealed the Indiana Board of Tax Review's final determination that upheld the assessment of its real property for the 2015 tax year. Pending its appeal, Holdings seeks to enjoin the collection of property taxes. The Court finds that Holdings is not entitled to an injunction.

## FACTS AND PROCEDURAL HISTORY

During the 2015 tax year, Holdings owned four parcels consisting of approximately 18 acres of land in Anderson, Indiana. (See Cert. Admin. R. at 189, 273-301.) On

September 2, 2014, Holdings acquired these parcels by Quitclaim Deed from the City of Anderson Department of Redevelopment, which had contemporaneously acquired them that day by Quitclaim Deed from the Anderson Community School Corporation (referred to together as the "Quitclaim Deeds"). (See Cert. Admin. R. at 278-92.) The only parcel at issue in this matter contained a 220,000 square foot building with, among other things, a natatorium, maintenance shops, an auditorium, band and choral rooms, offices, a cafeteria/kitchen, a two-story classroom, and an 8,996 seat basketball facility situated on the 8.56 acre parcel (the "Wigwam"). (See Cert. Admin. R. at 189, 218-20, 473-76.) The property was unoccupied on the March 1, 2015, assessment date. (See Cert. Admin. R. at 462, 484, 551.)

For the year at issue, the Madison County Assessor assigned the property an assessed value of $11,415,000 ($428,000 for land and $10,987,000 for improvements). On December 12, 2015, Holdings appealed the assessment to the Madison County Property Tax Assessment Board of Appeals (PTABOA). On September 19, 2016, after a hearing, the PTABOA reduced the assessment to $2,115,200 ($423,700 for land and $1,691,500 for improvements).[1] Believing the assessment was still too high, Holdings sought review with the Indiana Board on November 3, 2016.

On April 18, 2017, the Indiana Board conducted a hearing on the matter, during which Holdings claimed its assessment should be reduced to $68,500 ($68,500 for land and $0 for improvements). (See Cert. Admin. R. at 460.) To support its claim, Holdings

---

[1] The PTABOA apparently reclassified the property's use type as utility/storage and reassessed the entire building based on that use type under Indiana's assessment guidelines. (See Cert. Admin. R. at 298-301, 682-84.) (See also Cert. Admin. R. at 729 (indicating that applying the utility/storage use type to an unoccupied commercial property typically results in the lowest possible assessment).)

presented, among other things, an appraisal completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP); the testimony of one of the appraisal's preparers, Mr. Jay Allardt (an Indiana certified general appraiser and SRA designated member of the Appraisal Institute); and the documentation associated with its acquisition of the property. (See, e.g., Cert. Admin. R. at 187-267, 273-92, 471-72.)

Allardt's appraisal had been prepared prior to the 2015 assessment date at the request of the Anderson Department of Redevelopment for use "in considering a possible acquisition of the [] property." (Cert. Admin. R. at 188.) In substance, the appraisal provided that the Wigwam's highest and best use was as vacant land because its building contained asbestos, was not ADA compliant, lacked air conditioning and a sprinkler system, and was generally in poor condition. (See Cert. Admin. R. at 243-47, 477-80.) Allardt subtracted his estimated land value of $68,500 from his estimate of the building's demolition and remediation costs of $559,000 to conclude that the Wigwam's market value was negative $490,500 as of May 30, 2014. (See Cert. Admin. R. at 193, 248-50, 494-98.)

Holdings also maintained the "building wasn't worth anything" because it was acquired for $0 on September 2, 2014. (See Cert. Admin. R. at 505, 623-24.) The Quitclaim Deeds required the gymnasium to "be repaired, restored, and maintained in a first class manner" by December 31, 2018, and simultaneously, Holdings and the Anderson Community School Corporation entered into an Escrow Agreement that required the School Corporation to deposit $630,000 in an escrow account for Holdings to use to restore the property. (See Cert. Admin. R. at 273-92, 396-97, 400, 533-35, 605-16.) The Quitclaim Deeds further provided that upon completion of the restoration, the

3

Anderson Community School Corporation would receive the "irrevocable right" to use the Wigwam gymnasium for up to 12 days each year for a period of 10 years with an option to extend another 5 years. (See Cert. Admin. R. at 278-79.) If Holdings did not fulfill its obligations by December 31, 2018, however, the escrow funds were to be returned to the Anderson Community School Corporation. (See Cert. Admin. R. at 274.)

Finally, Allardt testified that the Assessor incorrectly determined the assessed value. Allardt claimed it was incorrect because it classified the property under the wrong use type (i.e., utility/storage) and failed to account for abnormal obsolescence in its cost approach, an omission that negatively impacted the value of the property.[2] (See Cert. Admin. R. at 508-10, 761-66, 777-78.)

In response, the Assessor asserted that Holdings' evidence lacked probative value because it did not establish the property's actual market value-in-use. (See Cert. Admin. R. at 377.) As support, the Assessor offered a variety of property tax assessment materials, Indiana case law, and the testimony of an expert witness, Mr. Anthony Garrison, an Indiana certified Level III Assessor-Appraiser. (See, e.g., 376-85, 680.) Garrison testified that there were "issues" with Allardt's appraisal because it estimated the Wigwam's market value, not its market value-in-use, even though the two standards are not necessarily equivalent. (See Cert. Admin. R. at 701-04, 710-18.) Indeed, Garrison explained that Allardt's appraisal was inconsistent with the market value-in-use standard because it was based on a hypothetical use of the property as vacant land rather

---

[2] Abnormal obsolescence is a "loss in value from obsolescence beyond normal depreciation[.]" REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2011)), Bk. 2, App. F at 4. In turn, obsolescence is "[a] diminishing of a property's desirability and usefulness brought about by either functional inadequacies or super-adequacies inherent in the property itself, or adverse economic factors external to the property." Id., Bk. 2, Glossary at 16.

4

than its current use as improved land. (See Cert. Admin. R. at 704-06, 709-18, 731.) Moreover, Garrison testified that Allardt's appraisal failed to account for the requirement in the Quitclaim Deeds and associated Escrow Agreement that Holdings restore the Wigwam's gymnasium. (See Cert. Admin. R. at 709, 717-18, 723-25.) Finally, Garrison stated that the September 2014 sale was not a market transaction because the seller was atypically motivated by its desire to restore the iconic Wigwam for the community's future use, as implied by the restrictions in the Quitclaim Deeds and the Escrow Agreement. (Cert. Admin. R. at 706-09.) (See also Cert. Admin. R. at 273-92.)

On March 29, 2018, the Indiana Board issued its final determination upholding the assessment. (Cert. Admin. R. at 407-22.) In so doing, the Indiana Board explained that it had weighed the evidence and determined that Holdings did not make a prima facie case for reducing its assessment because Allardt's appraisal did not credibly value the Wigwam and the September 2014 sale was not a probative, market transaction. (See Cert. Admin. R. at 418-21 ¶¶ 43-52.) The Indiana Board also determined that Holdings' use type and abnormal obsolescence claims were unpersuasive because they were not evidence of value, but merely attacked the assessment methodology. (See Cert. Admin. R. at 421 ¶ 50.)

On May 11, 2018, Holdings initiated an original tax appeal and filed a Petition to Enjoin the Collection of Tax pursuant to Indiana Code § 33-26-6-2. On October 5, 2018, Holdings filed an emergency motion to remove the property at issue from a tax sale, which the Court granted on October 10, 2018. Then, on November 27, 2018, after the Certified Administrative Record was filed and the parties submitted their briefs, the Court conducted a hearing on Holdings' Petition to Enjoin. Additional facts will be supplied

when necessary.

## LAW AND ANALYSIS

When, as here, a taxpayer appeals the assessment of its real property to the Tax Court, it must "pay taxes on the tangible property when the property tax installments come due, unless the collection of the taxes is enjoined under [Indiana Code § 33-26-6-2] pending" the resolution of the appeal. IND. CODE § 6-1.1-15-10(a) (2018). To enjoin the collection of the tax, Holdings must show the Court that (1) it has a reasonable opportunity to prevail in the appeal; (2) the issues raised by its appeal are substantial; and (3) the equitable considerations favoring the enjoining of the collection of the tax outweigh the state's interest in collecting the tax pending the appeal. See IND. CODE 33-26-6-2(c) (2018). All three factors must exist for the Court to enjoin the collection of tax. I.C. § 33-26-6-2(c).

### Reasonable Opportunity to Prevail

A reasonable opportunity to prevail is a tolerable, moderate, rational, honest, or equitable chance of success on the merits of the appeal. See Video Tape Exch. Coop of Am., Inc. v. Indiana Dep't of State Revenue, 512 N.E.2d 476, 477 (Ind. Tax Ct. 1986). Thus, when a party seeks to enjoin the collection of property taxes, it must demonstrate that it has a reasonable opportunity to prevail by showing that the Indiana Board's final determination may be reversed by the Tax Court because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2018). To that end, Holdings claims that it has a "reasonable likelihood of

6

success on the merits" because the Indiana Board's final determination regarding the credibility of Allardt's appraisal, the probative value of the September 2014 sale, and its abnormal obsolescence claim are arbitrary, capricious, an abuse of discretion, in excess of the Indiana Board's statutory authority, in violation of the procedure required by law, and unsupported by substantial evidence. (See Pet'r Br. Supp. Pet. Enjoin Collection Tax ("Pet'r Br.") at 5, 7-18; Pet'r Pet. Original Tax Appeal Final Determination Ind. Bd. Tax Review ("Pet'r Pet.") ¶¶ 42-72.)

### A. Allardt's Appraisal

Holdings claims it is likely to prevail on the merits because it made a prima facie case for reducing its assessment by introducing into evidence a USPAP-compliant appraisal and the testimony of its expert witness, Allardt, who both prepared and explained the appraisal in detail. (See Pet'r Br. at 10-11; Hr'g Tr. at 8-10.) Holdings states that because it established a prima facie case, the evidentiary burden shifted, triggering the Assessor's duty to introduce his own market-based evidence in rebuttal. (See Pet'r Br. at 11.) Holdings claims that the Assessor, however, did not meet this evidentiary burden because he simply "relied upon [his] cross-examination of [Holdings'] witnesses, which [cross-examination] was largely conclusory and focused on irrelevant hypotheticals." (Pet'r Br. at 14.) Consequently, Holdings contends that it is likely to prevail because the Indiana Board ignored its uncontroverted evidence, "attacked" Allardt's appraisal itself, and made the Assessor's case for him. (See Pet'r Br. at 10-16; Hr'g Tr. at 25-26.)

Holdings cites several cases as authority for the proposition that a taxpayer makes a prima facie case for reducing an assessment by presenting an appraisal completed in

7

conformance with USPAP. (See Pet'r Br. at 10-11 (citing Marion Cty. Assessor v. Washington Square Mall, LLC, 46 N.E.3d 1, 7-8 (Ind. Tax Ct. 2015); French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc., 865 N.E.2d 732, 739 (Ind. Tax Ct. 2007); Hometowne Assocs., L.P. v. Maley, 839 N.E.2d 269, 277 (Ind. Tax Ct. 2005); Meridian Towers E. & W. v. Washington Twp. Assessor, 805 N.E.2d 475, 479 (Ind. Tax Ct. 2003); Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs, 694 N.E.2d 801, 807 (Ind. Tax Ct. 1998)).) Nonetheless, neither specific language in, nor trends from, those cited cases indicate that there is a per se rule that a USPAP-compliant appraisal automatically establishes a prima facie case for reducing an assessment. This is consistent with the Indiana Board's statutory duty, as the finder of fact, to "review the probative value of an appraisal report." See IND. CODE § 6-1.1-15-4(p) (2018). See also Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010) (stating the Indiana Board is responsible for weighing the evidence and judging the credibility of the witnesses who testify at the administrative hearing). Consequently, the resolution of this appeal depends on whether the Assessor presented the Indiana Board with evidence that placed the credibility of Allardt's appraisal, and therefore its probative value, at issue.

The Assessor presented evidence in the form of testimony by Garrison, a certified expert on real property assessment in Indiana. (See Cert. Admin. R. at 680.) Garrison identified wide-ranging disparities between Allardt's appraisal and his testimony when compared to the valuation standards and assumptions underlying Indiana's assessment guidelines. (See Cert. Admin. R. at 680-756.) For example, Garrison testified that he considered the property at issue, "a 9,000 seat arena attached to a school[,]" to be a special purpose property. (See Cert. Admin. R. at 705-06, 710-13.) (See also Hr'g Tr. at

8

45 (indicating that Holdings also agrees that the Wigwam is a special purpose property).) He explained that Indiana's assessment guidelines define a special purpose property as a type of limited market property that has a "unique physical design, special construction materials, or a layout that restricts its utility to the use for which it was built." (Cert. Admin. R. at 710-11.) Garrison further explained that the guidelines require that a special purpose property's market value-in-use to be determined using the cost approach. (See Cert. Admin. R. at 712.) Moreover, he asserted that the market value-in-use of a special purpose property would not be determined by examining its highest and best use, which is a market value measure. (See Cert. Admin. R. at 700-06.) (See, also e.g., Cert. Admin. R. at 379 (citing Millennium Real Estate Inv., LLC v. Assessor, Benton Cty., 979 N.E.2d 192, 196 (Ind. Tax Ct. 2012) (explaining that when a property's current use is inconsistent with its highest and best use, the property's market value-in-use will not equal its market value because the sales price will not reflect the property's utility), review denied).)

Here, the certified administrative record reveals that the parties presented conflicting evidence during the Indiana Board hearing calling into question the credibility of Holdings' evidence. The Indiana Board exercised its discretion and weighed the evidence. Absent an abuse of discretion, the Court cannot reweigh that evidence. See Trimas Fasteners, 923 N.E.2d at 498. Accordingly, the Court finds that Holdings does not have a reasonable opportunity to prevail on this issue in its appeal.

**B. September 2014 Sale**

Next, Holdings claims that it has a better than negligible chance of succeeding on the merits because it presented probative evidence establishing that in September 2014, the Wigwam sold in a market transaction for a negative $630,000. (See Hr'g Tr. at 30-

9

31.)  Holdings claims this evidence is sufficient to establish the market value of the property thus making its prima facie case for reducing the assessment.  (See Hr'g Tr. at 30-34.)

During the 2015 tax year, Indiana defined "market value" for purposes of its property tax system as:

> The most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

2011 REAL PROPERTY ASSESSMENT MANUAL (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 5-6.  This definition specifies that conditions required for a fair sale, include the buyer and seller being typically motivated, without duress, compulsion, or pressure to act.  See id.  Accord 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.) (repealed 2010)) at 10 (defining "market value"); Marion Cty. Assessor v. Simon DeBartolo Group, LP, 52 N.E.3d 65, 70-71 (Ind. Tax Ct. 2016) (construing Indiana's definition of market value).

Evidence in the certified administrative record called into question whether the September 2014 sale actually reflected the property's market value.  Allardt testified that the seller was typically motivated, even though the buyer paid zero dollars and received access to $630,000 in return for the property transfer.  (See Cert. Admin. R. at 534-35.) Garrison, on the other hand, testified that those same facts, together with the restrictions in the Quitclaim Deeds and Escrow Agreement and the seller's status as an exempt governmental entity, actually indicate that the seller was not typically motivated.  (See

10

Cert. Admin. R. at 707-09.) Once again, the Indiana Board weighed the evidence to determine its probative value. (See Cert. Admin. R. at 420-21 ¶¶ 47-49.) Holdings has not identified anything in the certified administrative record that indicates the Indiana Board abused its discretion by weighing the credibility of the competing evidence and concluding that the sale price was not probative of the Wigwam's market value. Therefore, the Court finds that Holdings does not have a reasonable opportunity to prevail in its appeal based on this issue. See Trimas Fasteners, 923 N.E.2d at 498 (providing that the Court may not reweigh the evidence absent an abuse of discretion).

## C. Abnormal Obsolescence

Finally, Holdings claims it has a reasonable likelihood of success on the merits because the Indiana Board erred by rejecting its abnormal obsolescence claim. (See Pet'r Br. at 16-18.) Holdings explains that it "presented uncontroverted evidence of the Wigwam's significant functional and economic obsolescence[,]" which the Assessor failed to take into account. (See Pet'r Br. at 17-18.) Accordingly, Holdings contends that the Indiana Board's failure to reduce the assessment based on its abnormal obsolescence claim constitutes an abuse of discretion because it is against the logic and effect of the facts and circumstances before it. (See Pet'r Br. at 17.)

It is well established that when a taxpayer claims its property assessment is too high, it has the burden to prove its claim with market-based evidence. See, e.g., McKeeman v. Steuben Cty. Assessor, 10 N.E.3d 612, 614 (Ind. Tax Ct. 2014). Merely challenging the Assessor's methodology will not suffice. See, e.g., Gillette v. Brown Cty. Assessor, 54 N.E.3d 454, 456 (Ind. Tax Ct. 2016). Moreover, a taxpayer must support its claim that abnormal obsolescence has diminished the value of its property with

probative evidence that 1) identifies the causes of the alleged obsolescence and 2) quantifies the amount of obsolescence to be applied to its improvements. See, e.g., Idris v. Marion Cty. Assessor, 12 N.E.3d 331, 334 (Ind. Tax Ct. 2014); Hometowne Assocs., 839 N.E.2d at 273-74; Canal Square, 694 N.E.2d at 806-07. Although Allardt's testimony identified several causes of alleged obsolescence that may have diminished the value of the Wigwam, Holdings did not provide evidence to quantify their negative effect on the value of its property. (See, e.g., Cert. Admin. R. at 760-69.) Accordingly, the Court finds that Holdings does not have a reasonable opportunity to prevail in its appeal on this issue as well.

Holdings has failed to establish any grounds that persuade the Court that it has a reasonable opportunity to prevail in its appeal. Consequently, the Court need not address the remaining two factors.[3]

---

[3] Although insufficient by themselves to support equitable relief, the other two factors tend to favor injunction. The appeal raises a substantial issue of statewide importance, i.e., under what circumstances, if any, a USPAP-compliant appraisal automatically constitutes a prima facie case for assessment reduction. Moreover, the equitable considerations favor enjoining the collection of tax because the fiscal impact to Holdings, which would have to pay a significant tax bill or lose its interest in the property, far outweighs the negligible fiscal impact on the County, which has never collected taxes on the property because of its prior tax exempt status.

## CONCLUSION

For the foregoing reasons, Holdings has not demonstrated that the collection of property taxes should be enjoined pending the resolution of its appeal. Consequently, the Court DENIES Holdings' Petition to Enjoin the Collection of Tax. The Court will issue orders regarding the briefing of the merits and the stay of the tax sale under separate cover.

SO ORDERED this 14th day of December 2018.

Martha Blood Wentworth, Judge
Indiana Tax Court

Distribution:
Matthew S. Carr, Jacob V. Bradley, Courtney S. Figg, Kelly S. Thompson, Zachary D. Price