ATTORNEYS FOR PETITIONER:
**MATTHEW S. CARR**
**JACOB V. BRADLEY**
**COURTNEY S. FIGG**
QUARLES & BRADY LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ZACHARY D. PRICE**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

FILED
May 08 2019, 4:37 pm
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

WIGWAM HOLDINGS LLC,                )
                                    )
        Petitioner,                 )
                                    )
        v.                          )   Cause No. 18T-TA-00015
                                    )
MADISON COUNTY ASSESSOR,            )
                                    )
        Respondent.                 )

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 8, 2019**

WENTWORTH, J.

Wigwam Holdings LLC ("Holdings") challenges the Indiana Board of Tax Review's final determination that upheld the assessment of its real property for the 2015 tax year. Upon review, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

On September 2, 2014, Holdings was formed as a limited liability company pursuant to the Indiana Business Flexibility Act. (See Cert. Admin. R. at 11-45.) See also, e.g., IND. CODE § 23-18-2-4(a) (2019) (providing that a person "may form a limited

liability company by causing articles of organization to be executed and filed for record with the office of the secretary of state"). That same day, Holdings, the Anderson Community School Corporation, and the City of Anderson Department of Redevelopment executed a series of interrelated agreements by which Holdings acquired four parcels of land in Anderson, Indiana. (See Cert. Admin. 193, 273-92.) Only one of those parcels is at issue in this case: an 8.56 acre parcel containing a 220,000 square foot building with, among other things, an 8,996 seat basketball facility (the "Wigwam"). (See Cert. Admin. R. at 189, 218-20, 473-76.) For the 2015 tax year, the Madison County Assessor assigned the parcel an assessed value of $11,415,000 ($428,000 for land and $10,987,000 for improvements).

On December 12, 2015, Holdings appealed the 2015 assessment to the Madison County Property Tax Assessment Board of Appeals (PTABOA). On September 19, 2016, after a hearing, the PTABOA reclassified the entire property as utility/storage and reassessed it based on that use type under Indiana's assessment guidelines, reducing its assessed value to $2,115,200 ($423,700 for land and $1,691,500 for improvements). (See Cert. Admin. R. at 74-77, 298-301, 682-84.)

Unsatisfied with the reduction, Holdings sought review with the Indiana Board on November 3, 2016. The Indiana Board conducted a hearing on April 18, 2017, during which Holdings presented an Appraisal that was completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP). (See Cert. Admin. R. at 187-267.) The Appraisal, which valued the property at only $68,500 as of May 30, 2014, provided in substance that the Wigwam's "highest and best use" was as vacant land because its building was "functionally and economically obsolete" due to a variety of

2

physical deficiencies. (See Cert. Admin. R. at 243-47 (indicating, among other things, that portions of the building contained asbestos, were not ADA compliant, lacked air conditioning, and lacked a sprinkler system).) (See also Cert. Admin. R. at 477-80.) Holdings also presented the documentation associated with its acquisition of the property and explained that it 1) acquired the property for $0 on September 2, 2014, in a "fair, arm's length [market] transaction[;]" 2) agreed to repair, restore, and maintain the gymnasium by December 31, 2018; and 3) received access to an escrow account containing $630,000 to use to restore the property.[1] (See Cert. Admin. R. at 273-92, 396-97, 605-16.) In addition, one of the Appraisal's preparers testified that the assessment was incorrect because the property was classified under the wrong use type (i.e., utility/storage) and did not account for abnormal obsolescence[2] in its cost approach.[3] (See Cert. Admin. R. at 508-10, 761-66, 777-78.) Holdings asserted that the totality of its evidence demonstrated that the 2015 assessment should be reduced to $68,500. (See Cert. Admin. R. at 395-401, 460.)

In response, the Assessor asserted that Holdings' Appraisal should be disregarded because it estimated the property's market value rather than its market value-in-use, even

---

[1] The Anderson Community School Corporation deposited the $630,000 in the escrow account. (See Cert. Admin. R. at 273-77, 279, 606.)

[2] Abnormal obsolescence is a "loss in value from obsolescence beyond normal depreciation[.]" REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2011)), Bk. 2, App. F at 4 (emphasis added). "Obsolescence" is "[a] diminishing of a property's desirability and usefulness brought about by either functional inadequacies or super-adequacies inherent in the property itself, or adverse economic factors external to the property." Id., Bk. 2, Glossary at 16.

[3] The cost approach, one of the three generally accepted appraisal techniques for valuing real property, "estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value." 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 I.A.C. 2.4-1-2) at 2.

3

though the two standards were not equivalent in this case. (See Cert. Admin. R. at 378-84, 701-06.) The Assessor also claimed that the Appraisal had "issues" because it valued the property as vacant land, ignoring the restriction in Holdings' acquisition documentation that required the Wigwam gymnasium to be restored. (See Cert. Admin. R. at 709, 717-18, 723-25.) Moreover, the Assessor asserted that the September 2014 sale was not a market transaction because the seller, a governmental entity, was atypically motivated by its desire to restore the Wigwam for the community's future use. (See Cert. Admin. R. at 378 n.2, 706-09.) Finally, the Assessor maintained that assessing the property as utility/storage under the cost approach was proper because 1) the Wigwam is a special purpose property and 2) the cost approach methodology typically produced the lowest possible assessment for unoccupied commercial properties like the Wigwam. (See Cert. Admin. R. at 710-18, 729.)

On March 29, 2018, the Indiana Board issued its final determination, finding that Holdings "failed to make a prima facie case for reducing its assessment" because it did not support its claim with probative evidence. (See Cert. Admin. R. at 421 ¶ 52 (emphasis added).) Accordingly, the Indiana Board upheld the property's assessment of $2,115,200. (See Cert. Admin. R. at 422 ¶ 53.)

On May 11, 2018, Holdings initiated an original tax appeal and filed a Petition to Enjoin the Collection of Tax pursuant to Indiana Code § 33-26-6-2. On December 14, 2018, after holding a hearing, the Court denied Holdings' Petition to Enjoin. See Wigwam Holdings LLC v. Madison Cty. Assessor, 115 N.E.3d 531 (Ind. Tax Ct. 2018). After the matter was fully briefed on March 1, 2019, the Court took the case under advisement. Additional facts will be supplied when necessary.

**STANDARD OF REVIEW**

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, Holdings must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2019).

**ANALYSIS**

On appeal, Holdings asks the Court to reverse the Indiana Board's final determination, claiming it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and in excess of its statutory authority. (See, e.g., Pet'r Br. at 7.) More specifically, Holdings contends that the Indiana Board erred in upholding the Wigwam's assessment because it: 1) made a prima facie case by introducing into evidence a USPAP-compliant appraisal; 2) established that it acquired the property for $0 in a market transaction in September 2014; and 3) demonstrated that the assessment failed to account for the significant abnormal obsolescence that diminished the value of its property. (See Pet'r Br. at 7-23; Pet'r Reply Br. at 2-11.)

**1. Prima Facie Case**

Holdings first maintains that for purposes of Indiana's property tax assessment system, the law of the land is that a taxpayer's "[p]resentation of a USPAP-compliant

5

appraisal establishes a prima facie case of [the property's] true tax value" and triggers an assessing official's duty to rebut the appraisal with his own market-based evidence. (See Pet'r Br. at 7-12 (emphasis added); Pet'r Reply Br. at 2-4.) Holdings therefore claims that because it presented a USPAP-compliant appraisal and the Assessor did not present any market-based evidence to rebut the appraised values of both its land and improvements, the Indiana Board erred in concluding that its Appraisal lacked probative value. (See Pet'r Br. at 8-9, 11-18.)

Holdings cites nine cases as authority for its proposition that a taxpayer makes a prima facie case for reducing an assessment merely by presenting an appraisal completed in conformance with USPAP. (See Pet'r Br. at 7-8 (citing Fisher v. Carroll Cty. Assessor, 74 N.E.3d 582, 585 (Ind. Tax Ct. 2017); Marion Cty. Assessor v. Washington Square Mall, LLC, 46 N.E.3d 1, 7-8 (Ind. Tax Ct. 2015); French Lick Twp. Tr. Assessor v. Kimball Int'l, Inc., 865 N.E.2d 732, 739 (Ind. Tax Ct. 2007); Eckerling v. Wayne Twp. Assessor, 841 N.E.2d 674, 677 (Ind. Tax Ct. 2006); Hometowne Assocs., L.P. v. Maley, 839 N.E.2d 269, 277 (Ind. Tax Ct. 2005); Meadowbrook N. Apts. v. Conner, 854 N.E.2d 950, 957 (Ind. Tax Ct. 2005); Meridian Towers E. & W. v. Washington Twp. Assessor, 805 N.E.2d 475, 479 (Ind. Tax Ct. 2003); Inland Steel Co. v. State Bd. of Tax Comm'rs, 739 N.E.2d 201, 216 (Ind. Tax Ct. 2000), review denied; Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs, 694 N.E.2d 801, 807 (Ind. Tax Ct. 1998)).) Holdings' reliance on these cases, however, is misguided for the following reasons.

First, the majority of the cited cases address matters involving Indiana's old system of property assessment (i.e., pre-2002) that, unlike Indiana's current system, did not measure a property's market value-in-use. See Hometowne Assocs., 839 N.E.2d at 271

6

(regarding the 2001 tax year); Meadowbrook N. Apts., 854 N.E.2d at 952 (regarding the 1995 tax year); Meridian Towers, 805 N.E.2d at 476  (regarding the 1998 tax year); Inland Steel, 739 N.E.2d at 208 (regarding the 1993 tax year); Canal Square, 694 N.E.2d at 802 (regarding the 1992 tax year).  See also P/A Builders & Developers, LLC v. Jennings Cty. Assessor, 842 N.E.2d 899, 900 (Ind. Tax Ct. 2006) (explaining why Indiana's former and current systems of property assessment differ), review denied.  Furthermore, the portions of those cases cited involved issues regarding obsolescence adjustments, which are merely one aspect of a property's overall assessed value.  (See Pet'r Br. at 7-8 (citing Hometowne Assocs., 839 N.E.2d at 277; Meadowbrook N. Apts., 854 N.E.2d at 957; Meridian Towers, 805 N.E.2d at 479; Inland Steel, 739 N.E.2d at 216; Canal Square, 694 N.E.2d at 807).)  See also Hometowne Assocs., 839 N.E.2d at 273 (providing that an obsolescence adjustment was expressed as a percentage reduction (ranging from 0% to 95%) that was applied against an improvement's reproduction cost).  Consequently, none of the cases cited indicate that there is a per se rule that presenting a USPAP-compliant appraisal automatically establishes a prima facie case for reducing an assessment under Indiana's market value-in-use assessment system.

Second, Holdings has misinterpreted the cases cited that concern Indiana's market value-in-use assessment system.  See Fisher, 74 N.E.3d at 584 (regarding the 2012 and 2014 tax years); Washington Square Mall, 46 N.E.3d at 2 (regarding the 2006 through 2010 tax years); Kimball Int'l, 865 N.E.2d at 734 (regarding the 2002 tax year); Eckerling, 841 N.E.2d at 674 (regarding the 2002 tax year).  Neither the express language in nor the inferences from these cases indicate that there is a per se rule that merely presenting a USPAP-compliant appraisal establishes a prima facie case for an assessment

7

reduction. Rather, it is well-established that to rebut the presumption that an assessment is correct, a taxpayer must make a prima facie case by presenting probative evidence to the Indiana Board. See, e.g., Nova Tube Indiana II LLC v. Clark Cty. Assessor, 101 N.E.3d 887, 895 (Ind. Tax Ct. 2018); Louis D. Realty Corp. v. Indiana State Bd. of Tax Comm'rs, 743 N.E.2d 379, 382 (Ind. Tax Ct. 2001), review denied. Probative evidence, in turn, is evidence "'sufficient to establish a given fact and which if not contradicted will remain sufficient.'" See, e.g., Nova Tube, 101 N.E.3d at 895 (citation omitted). Consequently, when the Indiana Board evaluates the probative value of the parties' evidence, including appraisals, it is merely performing its statutory duty as the finder of fact by determining how much weight, if any, should be afforded to the parties' evidence. See IND. CODE § 6-1.1-15-4(p) (2019) (indicating that the Indiana Board, as the "trier of fact," [may] review the probative value of an appraisal"). See also Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498 (Ind. Tax Ct. 2010) (stating the Indiana Board is responsible for weighing the evidence and judging the credibility of witnesses who testify at the administrative hearing).

Finally, the unique, undisputed facts of this case indicate that Holdings' Appraisal failed to accurately reflect its property's market value-in-use at first blush. Indeed, Holdings sought to establish that its 2015 assessment should be reduced to $68,500 by presenting an Appraisal that provided an estimate of the property's market value. (See Cert. Admin. R. at 396 (arguing that Holdings made a prima facie case that the assessment was too high and should be reduced by introducing an Appraisal that complied with USPAP).) During the 2015 tax year, however, Indiana assessed real property on the basis of its market value-in-use: i.e., the value of the property "for its

8

current use, as reflected by the utility received by the owner or by a similar user, from the property."  See IND. CODE § 6-1.1-31-6(c) (2015) (amended 2016); 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 2.  "Most of the time, a property's market value-in-use will be equivalent to its market value; nonetheless, there are certain instances where a property's market value-in-use will not be equal it its market value[:]"[4]

> [W]hen a property's current use is consistent with its highest and best use and there are regular exchanges within its market so that ask and offer prices converge, a property's market value-in-use will equal its market value because the sales price fully captures the property's utility.  When, however, a property's current use is inconsistent with its highest and best use, then market value-in-use will not equal market value because the sales price will not reflect the property's utility.  The [Department of Local Government Finance] has explained that the latter occurs with respect to 1) properties "where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose" or 2) special purpose properties.[5]

Howard Cty. Assessor v. Kohl's Indiana LP, 57 N.E.3d 913, 917 (Ind. Tax Ct. 2016) (citations, internal brackets, and quotation marks omitted) (emphasis and footnote added), review denied.  In this case, the parties agreed during the administrative proceedings that the Wigwam is a special purpose property.  (See, e.g., Pet'r Br. at 15

---

[4]  For purposes of its property tax assessment system, Indiana defines "market value" as:

> The most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

Manual at 5-6.

[5]  This is logical because a "special purpose property" is a type of "limited-market property" that includes "structures with unique [physical] designs, special construction materials, or  layouts that restrict their utility to the use for which they were originally built."  Guidelines, Bk. 2, App. F at 16.

9

(providing that "the parties did not dispute that the Wigwam is a special purpose property).) Therefore, Holdings' Appraisal that estimated the Wigwam's market value, without something more, simply does not constitute probative evidence of the property's market value-in-use. See Kohl's, 57 N.E.3d at 917. Consequently, the Court will not reverse the Indiana Board's final determination on this basis.

## 2. September 2014 Sale

Next, Holdings maintains that the Indiana Board erred in finding that the September 2014 sale lacked probative value because the seller was atypically motivated, and therefore, the sale was not a market transaction. (See, e.g., Pet'r Br. at 21-23.) (See also Cert. Admin. R. at 420-21 ¶¶ 47, 49.) More specifically, Holdings contends the Indiana Board's finding is erroneous because 1) the seller's status as a governmental entity does not, by itself, establish that the seller was atypically motivated; and 2) the Indiana Board's finding was not supported by substantial evidence.[6] (See Pet'r Br. at 21-23; Pet'r Reply Br. at 9-10.)

During the administrative hearing, both parties successfully offered into evidence Holdings' acquisition documentation and a variety of newspaper articles regarding the sale of the Wigwam. (See Cert. Admin. R. at 273-92, 295-96, 339-75, 516, 585-87.) Holdings' witness testified that the seller, a governmental entity, was typically motivated despite the fact that Holdings paid zero dollars and received access to $630,000 in return for the property. (See Cert. Admin. R. at 533-35.) The Assessor's witness, on the other hand, testified that those same facts, along with the restrictions in Holdings' acquisition

---

[6] While the Indiana Board found the September 2014 sale non-probative for other reasons, (see Cert. Admin. R. at 420-21 ¶¶ 47-49), Holdings has not specifically challenged those findings on appeal. (See Pet'r Br. at 21-23; Pet'r Reply Br. at 9-10.)

documentation, actually indicated that the seller was not typically motivated, and therefore, the sale was not a market transaction.[7] (See Cert. Admin. R. at 706-09.) That testimony was not subsequently retracted, clarified, or rebutted. (See Cert. Admin. R. at 710-790.) Consequently, the certified administrative record reveals that the Indiana Board considered and weighed the competing evidence, making its finding based on the facts and circumstances before it.

When the Court evaluates the Indiana Board's review of conflicting evidence, as here, it will defer to the Indiana Board's findings so long as a reasonable mind could find substantial evidence in the record to support those findings. See Hamilton Cty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners, LLC, 938 N.E.2d 654, 657-58 (Ind. 2010). Based on its reasoning above, the Court finds that a reasonable mind could find that the Indiana Board's final determination with respect to this issue is supported by substantial evidence in the record. Accordingly, the Court cannot say that the Indiana Board's final determination should be reversed on this basis.

### 3. Abnormal Obsolescence

Finally, Holdings claims that the Indiana Board's final determination should be reversed because it demonstrated that the assessment was incorrect by showing that it failed to account for abnormal obsolescence. (See Pet'r Br. at 19-21.) Holdings maintains that because its witness identified the causes of obsolescence and quantified the amount of obsolescence to be applied to the Wigwam's building during the administrative hearing,

---

[7] Holdings' acquisition documentation provided that after Holdings restored the Wigwam gymnasium, the Anderson Community School Corporation would receive the "irrevocable right" to use the gymnasium for up to 12 days each year for a period of 10 years with an option to extend another 5 years. (See Cert. Admin. R. at 278-79.) The documents also provided that if Holdings did not fulfill its obligations by December 31, 2018, the escrow funds were to be returned to the Anderson Community School Corporation. (See Cert. Admin. R. at 274.)

the Indiana Board erred when it rejected Holdings' claim for an abnormal obsolescence adjustment. (See Pet'r Br. 19-20.)

It is well-established that when a taxpayer claims that abnormal obsolescence has diminished the value of its property, the taxpayer must present probative evidence to the Indiana Board that 1) identifies the causes of the alleged obsolescence and 2) quantifies the amount of obsolescence to be applied to its improvements. See, e.g., Idris v. Marion Cty. Assessor, 12 N.E.3d 331, 334 (Ind. Tax Ct. 2014); Hometowne Assocs., 839 N.E.2d at 273-74; Canal Square, 694 N.E.2d at 806-07. Contrary to Holdings' claims, however, the certified administrative record reveals that Holdings' evidentiary presentation did not affirmatively identify the causes of the obsolescence that purportedly diminished the value of its property nor did it quantify the amount of obsolescence to be applied to the property. (See Cert. Admin. R. at 187-267, 388-89, 391-92, 759-78.) As the Indiana Board explained in its final determination, Holdings merely "attacked the [assessment] methodology based on its own interpretation of the property record card and assumption of what [the Assessor or PTABOA may have] considered." (See Cert. Admin. R. at 421 ¶ 50.)

Nonetheless, Holdings maintains that the Court found in its order on Holding's Petition to Enjoin that Holdings identified the causes of obsolescence that allegedly caused its property to suffer a loss of value. (See Pet'r Br. at 19-20; Pet'r Reply Br. at 9.) A closer reading of that order, however, indicates that the Court did not. See Wigwam Holdings, 115 N.E.3d at 538 (stating that "[a]lthough Allardt's testimony identified several causes of alleged obsolescence that may have diminished the value of the Wigwam, Holdings did not provide evidence to quantify their negative effect on the value of its

12

property") (emphasis added).  Moreover, Holdings provided no evidence to quantify the purported obsolescence.  See id.  Accordingly, the Court will not reverse the Indiana Board's final determination on this basis either.

## CONCLUSION

Holdings has not demonstrated that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or in excess of its statutory authority.  Accordingly, the Indiana Board's final determination in this matter is AFFIRMED.